## WILDA PARKS, Respondent, v. THOMAS COYNE, Appellant.

### Springfield Court of Appeals, May 8, 1911.

1. **JUDGMENTS: Setting Aside Default Judgments.** In an action for damages instituted in August, 1905 for the death of plaintiff's husband, while working in a mine, appellant and one, Rundell, who resided in New York, were co-defendants. The cause was continued for several terms to enable plaintiff to get service on Rundell. Failing to get service on Rundell, plaintiff, on the first day of the November term, 1908, dismissed as to him and took judgment by default against appellant, who, within three days thereafter, filed a motion to set the judgment aside and supported the motion with affidavits, showing that the attorney for an employers' liability insurance company, with whom Rundell had insured, had promised to look after appellant's interests, and that he believed he was being represented in this case by this attorney; that he had no interest whatever in the mine, having sold out prior to the death of plaintiff's husband. The affidavits on behalf of appellant and respondent filed for and against the motion, are examined and *held* that the court erred in refusing to set aside the judgment.

2. ———: ———: **What Defendant Must Show: Appeal and Error.** To justify a trial court in setting aside a judgment by default the defendant must show that he had good reason for the default and that he had a meritorious defense, and where both of these things appear so clearly as to make it manifest that the refusal of the trial court was arbitrary, an appellate court will interfere.

3. ———: ———: **Diligence of Defendant: Attorney and Client: Attorney's Neglect.** Under a motion or petition to set aside a judgment by default, the petitioner must show that he has been diligent and it will not be enough to point the finger of blame towards his own attorney. Ordinarily he takes the consequences of his attorney's neglect; but where an attorney abandons the prosecution or defense of his client's cause, without notice to such client, a reasonably sufficient length of time

to enable him to secure other counsel should be given, and if judgment is rendered without giving him such time, it should be set aside.

4. ———: ———: ———: Discretion of Trial Judge. Cases involving the wisdom of the trial judges in the exercise of the discretion vested in them by law and covering the question of setting aside judgments by default, are in the nature of things, to be considered according to the facts and circumstances of each case. Admitting a meritorious defense, the main question to be kept constantly before the eyes of the tribunal is, has the defaulting defendant shown the measure of diligence that an ordinarily reasonable man would have exercised under the same or similar circumstances.

5. ———: ———: General Rule: Appeal and Error. The general rule is that where the application to set aside a judgment by default discloses a good defense on the merits and a reasonable excuse for delay is shown and no substantial injury has resulted from such temporary delay, the court should exercise its discretion in favor of the trial on its merits, and an appellate court is less apt to interfere when the judgment was set aside than when it was not.

6. ———: ———: Conditions. In setting aside default judgments the court may impose reasonable conditions.

Appeal from Jasper Circuit Court.—*Hon. Henry L. Bright*, Judge.

REVERSED AND REMANDED (*with directions*).

*D. C. Mallory* and *Frank L. Forlow* for appellant.

(1) When the defendant Coyne, showed to the court that he had a meritorious defense and the decree of diligence had been employed which the evidence here established, and taking into consideration the conduct of the plaintiff from the beginning of this cause until the day on which the default judgment was entered, it was the duty of the trial judge to set aside the interlocutory judgment. Adams v. Hinchman, 43 Mo. 168; Robin v. Pub. Co., 127 Mo. 385; Welch v. Mastin, 98 Mo. App. 273; Hoffman v. Loudon, 96 Mo. App. 184; Lamb v. Nelson, 34 Mo. 501; Hall v. McConey, 132 S. W. 618. (2) The application made by defendant to set aside the judgment by default

in this cause sets forth the general grounds of defense and if true, shows that the plaintiff had no right to recover against the defendant. Frorez v. Uhrig, 35 Mo. 517. (3) As stated by Judge Gray in the opinion of this court in the case of Hall v. McCorey, 132 S. W. 618, the general rule is that, where the application discloses a good defense on the merits, and a reasonable excuse for the delay, and no substantial injury has resulted from such temporary delay, the court should exercise its discretion in favor of the trial on the merits. Tucker v. Ins. Co., 63 Mo. 588; Stout v. Lewis, 11 Mo. 438; Judah v. Hogan, 67 Mo. 252; Barto v. Sioux City, 119 Iowa 179; Baxter v. Chute, 50 Minn. 164; Walsh v. Boyle, 94 Minn. 437; Miller v. Carr, 116 Cal. 378; Morse v. Callantine, 19 Mon. 87; Evans v. Terrell (Tex.), 95 S. W. 684.

*W. J. Owen* and *Thomas & Hackney* for respondent.

(1) A defendant in default should not merely show that he has a meritorious defense, but likewise the exercise of that reasonable prudence and diligence expected of a person in his situation. Colter v. Luke, 129 Mo. App. 702. (2) To warrant the appellate court in interfering with the action of the trial court in refusing to set aside the judgment by default both of these things must appear so clearly as to make it manifest that the refusal of the trial court was arbitrary. Robyn v. Pub. Co., 127 Mo. 390; Fry v. Railroad, 73 Mo. 123; Judah v. Hogan, 67 Mo. 262; Tucker v. Ins. Co., 63 Mo. 588; Grippen v. Veil, 56 Mo. 310.

NIXON, P. J.—This suit was instituted on August 7, 1905, in the circuit court of Jasper county by Wilda Parks against M. W. Rundell and Thomas Coyne. The relief sought was damages in the sum of $4500 alleged to have ensued by reason of the death of plaintiff's husband, Robert Parks, on August 30, 1904, while working in the Mary Louise mine near Webb City as a servant of

the defendants. It appears that Rundell resided in New York. The summons in the case was duly served on Coyne, but as to Rundell the sheriff's return recited that he could not be found in Jasper county. Some time was then consumed in an effort to have Rundell served and the case was continued from term to term. On November 16, 1908, plaintiff appeared in court and voluntarily dismissed the cause as to Rundell and judgment by default for $2000 and costs was entered for plaintiff against defendant Coyne who did not appear or plead. On November 19, 1908, Coyne, having learned that a default judgment had been taken against him, filed a motion to set the same aside, and it is from the action of the lower court in refusing to do so that defendant Coyne has appealed. The question for our consideration is therefore one of practice, whether the trial judge so abused the discretion confided to him as to warrant a reversal by this court.

Defendant's motion to set aside the default judgment alleges that the suit was originally filed in the circuit court at Joplin on the —— day of ——, 1904, against M. W. Rundell, Thomas Coyne and the Mary Louise Mining Company; that he, Coyne, did not employ an attorney to represent him, but that A. E. Spencer, who was attorney for the insurance company carrying a policy for the defendant, Rundell, appeared in the cause and filed an answer for all of the defendants, including Coyne, and took charge of the defense of said cause. "That on January 19, 1905, the said Spencer filed an amended answer for all of the defendants in said cause. That on the 20th day of January, 1905, said cause was tried before a jury and the said A. E. Spencer appeared as the attorney for all of the defendants, and W. J. Owen and A. L. Thomas as attorneys for the plaintiff. That after the plaintiff's evidence was all in the court sustained a demurrer thereto and plaintiff took a non-suit with leave to move to seat the same aside and that said judgment was a final judgment in favor of the

defendants. That afterwards, on the 1st day of February, 1905, a motion to set aside the judgment of nonsuit was filed and heard and the same was overruled. That all through the trial of said cause the said A. E. Spencer represented this defendant, Thomas Coyne, as well as the other defendants. That no charge was made against this defendant for services by the said A. E. Spencer.

"That thereafter, on the 7th day of August, 1905, this suit was filed in the circuit court at Carthage and was brought by the same plaintiff against the same defendants, M. W. Rundell and Thomas Coyne, and was for the same cause of action that was tried in the circuit court at Joplin as above described for the death of plaintiff's husband by the negligence of the defendants on the 30th day of August, 1904. * * · * That on the 18th day of February, 1907, the plaintiff filed in said cause an amended petition against the said Thomas Coyne and M. W. Rundell. That on November 18, 1908, said cause was continued by agreement of parties over the November term of court. That the said Coyne did not employ an attorney to represent him in said cause for the reason that A. E. Spencer who was representing the defendant, M. W. Rundell, through the insurance company which carried a policy on the mine, had represented the defendant, Thomas Coyne, in said suit at Joplin, and this suit, being for the same subject-matter, and between the same parties, and this defendant, Thomas Coyne, having learned that the cause had been continued in the said court from time to time, took it for granted that the said A. E. Spencer was giving this cause the necessary attention and the same attention that he had given to the cause above referred to pending in the circuit court at Joplin, and that this defendant, Thomas Coyne, would be notified when the cause should be for trial by the said A. E. Spencer who had given him the notice from time to time in the other suit. That he had been advised by the said A. E. Spencer that he would not need to employ an.

attorney because he, in looking after the interests of the defendant, M. W. Rundell, would also be looking after the interests of this defendant in said suit, and this defendant, Thomas Coyne, says that for the reason that the said A. E. Spencer had taken care of the interests of the defendants in the other suit and his offer to do so led this defendant to believe since November 1, 1905, that the said Spencer was looking after the interests of said defendant as well as the interests of the said M. W. Rundell, his co-defendant.

"This defendant further states that he was advised by A. E. Spencer in the spring of 1908, at the time of the settlement in the Joplin circuit court of the suit of Nellie Rogers against the same parties that A. L. Thomas, attorney for the plaintiff in this suit, was desirous of making a settlement of this suit, and that this defendant at the request of the said A. E. Spencer called upon the plaintiff in this suit and she offered to take $400 in settlement of the claim in this suit, and that he made report of the offer to the said A. E. Spencer, attorney for the insurance company, and presumed that the offer was still pending to compromise said suit and heard nothing further from said cause until Monday afternoon, November 16, 1908, when he was advised that the suit had been dismissed as against M. W. Rundell and a judgment taken against him by default for the sum of $2000, which said facts are fully set out in the affidavits herewith filed.

"And defendant further states that he has a good and meritorious defense to the cause of action stated in the petition of plaintiff, to-wit,—that the accident which caused the death of Robert Parks, the plaintiff's husband, occurred on August 30, 1904, and that on the 1st day of August, 1904, the defendant, Thomas Coyne, sold all of his interest in the said mine to M. W. Rundell, trustee, and had nothing to do with the management of said property after the sale. That he did not employ the men and did not have charge of the work of mining that

was being carried on and knew nothing of the accident until after it had happened and that he had no interest in the mine, machinery or property, and had nothing to do with the operation thereof in any manner whatever. That he was not and is not liable in damages to the plaintiff for the death of her husband, all of which he will be able to fully show if permitted to make his defense herein.

"Wherefore, this defendant prays the court to set aside the judgment of default entered against him in said cause and permit him to make his defense therein for the reasons herein stated and shown by the affidavits herewith filed."

Coyne's affidavit filed in support of this motion is in part as follows:

"Affiant states that on the 1st day of August, 1904, he sold all of his interest in the property, mine and mill, of every kind and description, at which plaintiff's husband was afterwards killed, to M. W. Rundell, trustee. That from the 1st day of August, 1904, this affiant had no interest whatever in said property and was not connected therewith in any manner and did not have charge of the work nor of the men nor of the mill but was engaged in mining elsewhere. That on the 30th day of August, 1904, when it is alleged by plaintiff that her husband was killed in the mine, this affiant had not had any interest in the same for thirty days, neither as owner, operator or superintendent, ground-boss, or otherwise. That all of his interest therein ceased on the said 1st day of August, 1904.

"This affiant further states that on the —— day of December, 1904, a suit was filed in the circuit court at Joplin by this same plaintiff against M. W. Rundell and the Mary Louise Mining Company and this affiant, and that at the time of the accident the said M. W. Rundell was carrying an insurance policy upon said mine and men and that one A. E. Spencer, an attorney at Joplin,

was the attorney for said insurance company. That after this affiant had been served with summons in said cause, he was advised by the said A. E. Spencer that he represented the insurance company in said suit, and that he would also represent this affiant in the suit, not as a hired attorney, but because of the fact that the interest of this defendant, Thomas Coyne, in this suit was similar to that of the other defendants whom he was representing, and for that reason the defendant would not need to employ an attorney. That the said A. E. Spencer filed an answer on the 5th day of January, 1905, in said cause for all of the defendants therein, and on the 19th day of January, 1905, filed an amended answer in said cause, and on the 20th day of January, 1905, appeared as attorney for all of the defendants in the trial of said cause, and said cause was tried before a jury and after all of the plaintiff's evidence was in, the court sustained a demurrer filed by the said A. E. Spencer and the plaintiff took a non-suit with leave to move to set the same aside and this court refused on the 1st day of February, 1905; and this affiant further states that the said A. E. Spencer made no charge against him for representing this affiant with the other defendants in said cause in said court."

After stating the circumstances attending the refiling of the suit up to the filing of the amended petition in February, 1907, the affidavit continues:

"This affiant states that he never employed an attorney in said cause but was led to believe from the fact that said A. E. Spencer had looked after his interest in the suit at Joplin between the same parties and for the same cause of action without charge to him, and did believe that the said A. E. Spencer was giving to this suit all necessary attention. That on the 18th day of November, 1907, as shown by the record of this court, this cause was continued by agreement of the parties over the term. That this affiant had no attorney employed and no one to look after his interests other than through the supposed

arrangement with the said A. E. Spencer. This affiant
states that from the time this suit was filed in the cir-
cuit court at Carthage he heard nothing from the suit
until in Joplin some time after the filing of the same
when the said A. E. Spencer advised him that the cause
had been continued over the term, the date affiant is un-
able to state. That thereafter he heard nothing of the
suit until the —— day of ——, 1908, at the time of the
settlement of the suit of Nellie Rogers against the said
Rundell and this affiant in the circuit court at Joplin in
which the attorneys for the plaintiff in this suit were the
attorneys for the plaintiff in that suit, and which suit
was settled, and this affiant was requested by A. E. Spen-
cer that as A. L. Thomas represented the plaintiff in this
suit as one of the attorneys in this suit, desired to com-
promise said suit, that he, Thomas Coyne, should see the
plaintiff, Wilda Parks, and find out what she would take
to settle this suit. That this affiant in accordance with
that request called upon said Wilda Parks and she of-
fered to take the sum of $400. That this affiant thereupon
communicated this offer to the said A. E. Spencer, and
after that he had heard nothing further from it but sup-
posed that the negotiations were still pending for the set-
tlement as nothing had been said to him to the contrary.
That affiant had no further information concerning this
suit until he was advised on Monday afternoon, Novem-
ber 16, 1907, by Frank L. Forlow, that a judgment by de-
fault had been taken against hm for the sum of $2000 in
this suit and the cause dismissed as to his co-defend-
ant, M. W. Rundell.

"That this affiant had been led to believe by the
conduct of the said A. E. Spencer in the other suit at
Joplin and the fact that he had notified him that this
cause had been continued and had requested him to ap-
proach the plaintiff for a settlement as aforesaid all of
which affiant did, he was led to believe that the said
A. E. Spencer was doing everything that was necessary
to protect his interests in the said cause and that he

would be notified by the said Spencer at any time that
he should be needed or desired in said cause. Affiant
states that the said A. E. Spencer was not employed by
him as his attorney to represent him in said cause but
his conduct in the other suit in Joplin and in the
charge that he had taken of this suit and the relation of
the said M. W. Rundell, the co-defendant of this affiant,
to the said Spencer growing out of the fact that he was
the attorney for the insurance company which held a
policy upon said Rundell and the apparent charge that
the said Spencer had taken of the cause and the fact
that he had advised this affiant that it would not be
necessary for him to employ an attorney to look after
his interest in said cause. Affiant further states that
he never had any notice that the suit would be for trial
at this term of court as the cause had been pending
since November, 1905, and that negotiations for a settle-
ment had not been abrupted or broken and by the long
lapse of time since the bringing of the suit and the
conduct of the same during all of these years, he was
misled and never knew until the evening of the 16th
of November, 1908, that no answer had been filed for
him in said cause and that the same was to be taken
up and heard at this term of court. That affiant lives
in Webb City, Jasper county, Missouri, is well ac-
quainted with the plaintiff and her attorneys and also
with the said A. E. Spencer, and has at his office and
residence telephone connections with Carthage and
Joplin, and no notice of any kind was given him that
said cause would be called for trial at this term of
court.

"Affiant further states that he does not believe the
plaintiff has any cause of action against him upon which
she can recover, and that he had a good and meritorious
defense against said claim of plaintiff. That he is ready
and willing to file his answer herein and to try the said
suit and not delay the rights of the plaintiff herein.
He states that he is willing and ready to try said cause

at this term of court and within a reasonable time after he has been permitted to file his answer herein as above stated if this default judgment is set aside by the court. That he has never requested a continuance of said cause since the same was filed. Said affiant further states on information and belief and he was advised that the said A. E. Spencer was not present in court on Monday, November 16, 1908, but was engaged in the trial of a cause in Springfield, Missouri."

A. E. Spencer, the attorney, did not testify nor was his affidavit filed.

Julius Wheeler in his affidavit states that defendant, Coyne, sold his interest in the Mary Louise mine on or about the 1st day of August, 1904, and that immediately after the sale, the sign,—"Mary Louise Mining Company," was taken off the derrick; that within one or two days after Parks was killed, he was employed by Norris Ashcraft as ground foreman and went to work in the mine as ground foreman. That he was paid his wages after Coyne sold out by checks signed "M. W. Rundell, Trustee." That after Coyne sold out to Rundell, he never at any time saw him undertake to direct the underground workings or the men who were working in the ground.

Defendant also offered the affidavit of Ed. Foster who stated that in the spring of 1908 he went with Coyne to see plaintiff, Wilda Parks; that Coyne told her he came to see her about a settlement of her claims against Rundell for damages and had been sent there by Mr. Spencer, the attorney for the insurance company, that he thought they might pay three or four hundred dollars, and that he would submit the matter to Mr. Spencer. That Mrs. Parks seemed willing to make a settlement and after they had had some conversation Coyne said he would submit the matter to Mr. Spencer and see what could be done; that he thought he could get them to pay three or four hundred dollars.

. Defendant introduced the court records touching the case of Parks v. Rundell et al., showing the several steps taken, the filing of an answer on January 5, 1905, and of an amended answer on January 19, 1905, and of a reply on the same day, the sustaining of defendant's demurrer to plaintiff's evidence in the first trial, the entry of plaintiff's non-suit, the motion to set the same aside and the trial court's adverse action. thereon, etc.

Plaintiff filed the affidavits of John Morse, George Whitehouse, J. B. Davis and Wilda Parks. Morse stated that he worked in the Mary Louise mine where Parks was killed; that from the time Coyne sold his interest in said mine on August 1, 1904, to Rundell, he (Coyne) was superintendent and manager of said mine. That at the end of the week during which Parks was killed, affiant and other workmen were "docked" by Coyne a quarter of a shift for the time consumed by them in taking out the dead body of Parks. George Whitehouse stated that he was boarding with Wilda Parks in the spring of 1908 when Coyne was there to see her; that he was in the opposite room and heard part of their conversation; that he heard Coyne ask her if she would sign certain papers, and that he heard the papers rattling; that he told her that if she would sign the papers he would insure her so much or would return the papers; that she said she could not do it, that she would not sign any papers, that she had her case in the hands of her lawyers, and that he would have to settle with her lawyers; that it was in their hands for settlement. The affidavit of J. B. Davis was substantially the same as that of Morse. Wilda Parks stated that Coyne came to see her in the spring of 1908 and told her if she would sign some papers he had in his pocket he thought he could get her $300, and if he could not he would bring them back to her; that she told him to see her lawyers; that she did not tell him she would take $400.

Coyne took the stand and testified that he had no papers with him when he went to see the plaintiff.

Parks v. Coyne.

After hearing this evidence the court refused to set aside the default judgment and defendant appealed.

It may be stated here that the prayer of plaintiff's petition was for $4500 and costs whereas the default judgment was for $2000. If any evidence was introduced to assist the court in fixing the plaintiff's measure of damages at $2000 it is not preserved in this record and appellant states that there is no record that any evidence was offered although this division of the court was at all times provided with a stenographer.

The authorities in this state are unanimous that in order to justify a trial court in setting aside a judgment by default, the defendant must show (1) that he has good reason for the default, and (2) that he has a meritorious defense, and that both these things must appear so clearly as to make it manifest that the refusal of the trial court was arbitrary. [Robyn v. Publishing Co., 127 Mo. l. c. 390, 391, 30 S. W. 130, and cases cited; Hoffman v. Loudon, 96 Mo. App. l. c. 189, 70 S. W. 162; Welch v. Mastin, 98 Mo. App. l. c. 277, 71 S. W. 1090; Hart v. Handlin, 43 Mo. l. c. 171; Florez v. Uhrig's Adm'r., 35 Mo. l. c. 519.]

The rulings have also been uniform that in showing diligence, it will not be enough for the petitioner to point the finger of blame toward his own attorney who has neglected to look after his client's interests; he takes the consequences of his attorney's neglect as though he had been the actor. [Welch v. Mastin, supra, l. c. 277, and cases cited; Robyn v. Publishing Co., supra, l. c. 391.]

It must be borne in mind, however, that these cases involving the wisdom of trial judges in the exercise of the discretion vested in them by law, are in the nature of things to be considered one at a time, and not as an integral branch of our system of jurisprudence where we can evolve certain rules of conduct that will fit any certain number or character of cases. The facts and cir-

cumstances of each case must be kept constantly before the eyes of the tribunal called upon to decide whether a defaulting defendant has shown the measure of dilgence that an ordinarily reasonable man would have exercised under the same or similar circumstances.

The defendant's fault in this case is not so much that he failed to procure the services of an attorney to represent his interests, but it lies in his mistaken belief that he had an attorney when he had none. We have given the contents of the several affidavits presented to the circuit judge a detailed consideration so as to show how few of defendant's statements are controverted. Surely defendant's affidavit cannot be read without leaving the conviction in the mind of the reader that the defendant honestly thought the attorney for the insurance company was looking after his interests in the suit, and that he honestly intended to resist the plaintiff's claims when the case came on for trial. As his statements in this regard are nowhere controverted, some credence ought to be attached to them. In showing diligence, defendant is not required to establish conduct such as a skilled lawyer would perhaps show; he is only required to show that he acted as a reasonable man would have acted in his situation. It must be remembered in this connection that this case was in the courts for several years; that it had been continued from term to term, evidently by the plaintiff for the purpose of serving Rundell, for it nowhere appears that defendant ever sought delay. It will not be presumed that Coyne desired a judgment entered against himself; it will be presumed that he knew the law which is that unless he appeared and made a defense judgment would be taken against him and that he knew he should have counsel to represent him in the suit. If the circuit judge gave any weight whatsoever to the uncontradicted statements in defendant's affidavit, he must have believed that defendant thought he had an attorney. It is certain that A. E. Spencer had undertaken the defense of the case for some-

Parks v. Coyne.

one. There was positively nothing presented to the circuit judge tending in the remotest degree to show the contrary. It is not like a case where the evidence is in sharp conflict, or, in deed, in any conflict whatever. If A. E. Spencer abandoned the case, there is no evidence that Coyne knew of it or had any notice of the fact. It has been frequently held that, where an attorney abandons the prosecution or defense of his client's cause without notice to such client, a reasonably sufficient length of time to enable him to secure other counsel should be given before judgment is taken against him, and, if judgment is rendered without giving him such time, it will be set aside upon a showing of such facts. [Evans v. Terrell, (Tex. Civ. App.) 95 S. W. 684; Hall v. McConey (Mo. App.) 132 S. W. l. c. 620.]

The evidence abundantly shows that the mine in question was covered by a policy of employers' liability insurance and that the insurance company, by its attorney, A. E. Spencer, had assumed the defense of these cases. (A man named Rogers was killed at the same time as Parks and that suit was settled.) It is a well known fact that in such cases the attorney for the insurance company defends the action and that the mining company seldom employs counsel, and when it does, he merely assists in resisting the claim of the plaintiff. In this case the parties chose to leave the whole defense to the attorney for the insurance company, and, if defendant's uncontroverted statements are to be believed, this attorney a different times assured this plaintiff that he need not employ counsel as he would look after this defendant's interests. What more could be demanded of the defendant? Did he not act as a reasonably prudent man would have acted in accepting the proffered services of a lawyer of Mr. Spencer's reputation? Consciously or unconsciously Mr. Spencer abandoned the case; at least, this is an inference that would fairly be drawn from the undisputed facts. The defendant states that he had no notice that this case would be taken up on the

very first day of the term and on the first day of court held by the newly elected judge. It is unquestionable that defendant desired a trial on the merits and at all times expected to avail himself of this privilege. This is emphasized by the fact that the case had once been tried and a demurrer sustained to plaintiff's evidence. He expressed in positive terms his willingness to proceed to trial at that term if the court would set aside the default judgment. Under these circumstances, a sense of honest justice compels the recollection of this significant language of our Supreme Court in the case of Hart v. Handlin, supra, l. c. 171: "The earnest determination of the defendant to defend against the claim sued on is manifest. Under the circumstances it would be, as it seems to us, more technical than reasonable to deny him an opportunity of doing so. . . . A meritorious defense and a reasonable degree of diligence in making it is all that it is necessary to establish in order to justify the setting aside of the interlocutory judgment."

The reason for the strict enforcement of the rule as to the trial court's discretion in these matters in most of the cases is that plaintiff would suffer expense or delay if the default judgment were set aside. This condition does not exist in this case for the defendant moved to set aside the default judgment within three days after it was rendered and then agreed that if the court would set aside he would proceed to trial at that term of court. "The general rule is that, where the application discloses a good defense on the merits, and a reasonable excuse for delay is shown, and no substantial injury has resulted from such temporary delay, the court should exercise its discretion in favor of the trial on the merits." [Hall v. McConey, supra, l. c. 620, and numerous cases cited.] In the same opinion, Judge GRAY said: "As said in Bailey v. Taaffe, 29 Cal. 423: 'The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion,

to be exercised ex gratia, but a legal discretion, to be exercised in conformity with the spirit of the law, and in a manner to subserve, and not impede or defeat, the ends of substantial justice. We do not wish to be understood as holding any views which will permit a party to trifle with the rules of practice of the court; but the administration of the law should be so carried on as not to be a denial of justice. . . . .' The appellant courts of this state have, in a number of cases, reversed the judgment of the trial court overruling a motion to set aside judgments by default. [Stout v. Lewis, 11 Mo. 438; Tucker v. Insurance Co., 63 Mo. 588; Judah v. Hogan, 67 Mo. 252." State ex rel. v. Bourne (Mo. App.) 131 S. W. 1. c. 901.] It is well settled that the appellate court is less apt to interfere when the judgment was set aside than when it was not. This is upon the theory that, when the judgment is set aside, the cause is reopened and justice will yet be done on the merits between the parties. [Harkness v. Jarvis, 182 Mo. 1. c. 241, 81 S. W. 446; Helm v. Bassett, 9 Mo. 55; Yates v. Shanklin, 85 Mo. App. 360; Longdon v. Kelly, 51 Mo. App. 572.] "It should be the policy of courts to try causes on their merits whenever such a course will not result in hurtful delay." Tucker v. Insurance Co., supra. "Of course, mere forgetfulness of the party or his attorney will not excuse him. But misunderstanding or mistake undoubtedly will." [Barto v. Elec. Co., 119 Iowa, 179, 93 N. W. 268.]

Here, then, is a case of an honest mistake of fact, with a showing that defendant acted as a reasonable man would have acted, with no inclination to delay the trial or keep plaintiff from her rights. It is not shown that this case was set for trial on the first day of the term, the day the new judge was seated, or that plaintiff had witnesses present prepared for trial. With defendant agreeing to proceed to trial at that term of court the delay was not hurtful. Although defendant was acquainted with plaintiff's attorneys and had telephone connections in his office and residence, no word same to

him that he was about to be summarily adjudged indebted to the plaintiff for $2000 and the costs of the litigation and that the suit was to be then and there dismissed as to Rundell, leaving him with the judgment to pay instead of the insurance company or Rundell. It seems to us, under all these circumstances, with the power in his hands by a delay of a few days to give this defendant an opportunity to present his defense to plaintiff's claim, the trial judge unwisely and very unjustly refused to set aside the default judgment. Substantial justice could have been accomplished and without hurtful delay to the plaintiff who had so long delayed the trial of this case on her own account. After the plaintiff had taken three years to get her case into court, the sudden, paroxysmal movement when she saw defendant was not in court, has the appearance of a snap judgment.

As we said in the case of Hall v. McConey, supra, in setting aside default judgments, the courts may impose reasonable conditions. We will therefore reverse the judgment and remand the cause with directions to set aside the default judgment, upon the condition, however, that the appellant pay the costs of the case up to and including the date of the overruling of the motion to set aside the judgment, and, in addition, shall file with the clerk of the circuit court of Jasper county, within thirty days of the date of the filing of this opinion, an answer to the petition, and shall within said time, file with the clerk of this court the certificate of the circuit clerk that said costs have been paid and said answer filed. Otherwise the judgment will be affirmed. *Cox, J.,* concurs; *Gray, J.,* having been judge of the circuit court of Jasper county at the first trial of this case in the year 1905, not sitting.