Ordway v. Suchard & Gebhard.

ORDWAY v. SUCHARD & GEBHARD.

Default: NEGLIGENCE: ACCIDENT. While the rule is recognized, that the discretion confided to the trial court in applications to set aside defaults should not be exercised in favor of a party against whom a default has been entered in consequence of his own negligence or that of his attorneys, it was nevertheless *held*, where it was made to appear by affidavit of defendant's attorneys that the reason why they did not appear and file an answer was on account of an accidental misplacement of the petition and notice handed to them by the plaintiff, whereby the case was overlooked by them in examining their papers at the commencement of the term, in order to ascertain what cases they had to attend to, that the case did not fall within the rule recognized, and that a judgment by default therein rendered should be set aside, the other requirements of the statute respecting the filing of an affidavit of merits, and the time within which such applications should be made, having been complied with.

*Appeal from Black Hawk District Court.*

SATURDAY, JUNE 10.

THE plaintiff commenced his action in equity in the district court of Black Hawk county to redeem certain real property from tax sale at which the defendants were the alleged purchasers and had obtained a tax deed for the land. The original notice was not served on the defendants but service for them was accepted by Griffith & Knight, their

VOL. XXXI.— 61

attorneys, on the 7th day of March, 1870. The petition was filed April 16, 1870. At the following May term (24th) a default and decree was rendered against the defendants as prayed in plaintiff's petition. During the same term of the court, and on the 31st day of May, 1870, the defendants by Griffith & Knight appeared and moved the court to set aside the default upon the following showing:

" State of Iowa, }
Dubuque County. }

" I, W. J. Knight, being duly sworn, do depose and say, that the firm of Griffith & Knight, of which I am a member, is, and has been for some time, attorneys for the defendants in the above-entitled action; that in March last the plaintiff sent us the original notice in said suit and we accepted service of the same for and in behalf of the defendants, intending to appear and plead for them at the present term of this court; that the copy of the original notice and of the petition which were given to us by the plaintiff's attorneys, when we accepted service as aforesaid, were accidently mislaid in our office, and in this way the cause was overlooked by us when we examined our papers to ascertain what cases we had to attend to at commencement of the present term of this court, and only to-day, when looking through other papers in our office, was it that we discovered that we had omitted to plead in time in this court.

" I do further depose, that this cause is a proceeding in equity by the first method, to settle the title to a tract of land which is involved in the cause, and that I believe that the defendants have a good title to the same, and can make the same appear if an opportunity is given them to do so.

" I further depose and say, that the sole and only reason why we did not promptly plead in said cause was because of the accidental misplacing of the papers as aforesaid, and the consequent losing sight of the case by us as aforesaid.

That our clients are and have been non-residents of this State, and the care of their interest in this cause has been intrusted solely to us. And that this application is not made to delay or prolong the cause, but in good faith and for the end of justice.

"W. J. Knight."

[L. S.]   "Subscribed and sworn to before me this 30th day of May, A. D. 1870, by W. J. Knight.

"J. F. Plumbe,<br>"<em>Notary Public.</em>"

The plaintiff, on the 6th day of July, 1870, filed the following affidavit:

"State of Iowa, Black Hawk County, ss:

"George Ordway v. Suchard & Gebhard and William H. Gebhard.

"I, George Ordway, being first duly sworn, do depose and say, that I am plaintiff in the above-entitled cause, that a month or more after the notice in this case was served by the acceptance of service by defendants' attorneys, Griffith & Knight, I called at the office of Griffith & Knight, in Dubuque, and delivered to Mr. Griffith, a member of said firm, a copy of the petition herein, and after some little discussion in regard to the merits of the case, said Griffith admitted that defendants had not a good defense; and said I had better pay what they asked for a release of their claim upon the land, as they (meaning the attorneys, Griffith & Knight) had a good many cases of the same kind, and that they should take this with the others into the United States court, and carry them to the United States supreme court by appeal, that they could as well carry fifty cases there as one, while it would cost me much more to fight this case through so many courts than to pay

the difference between what the defendants asked and the amount I had tendered, that he did not expect to beat me in the end, or that probably they would not beat me, or some words substantially to that effect, but that their clients could make more money on the whole by such a course than they could to settle in the way I proposed, which was to pay the amount tendered in this case."

And this deponent further says, " that he is informed and believes that the lands mentioned in the plaintiff's petition were purchased at the pretended tax sale, by one W. J. Barney, for defendants, and he knows, by correspondence with said Barney, that said Barney has now control of the interest or claim of defendants therein, and that defendants' attorneys, Griffith & Knight, are employed by said Barney for defendants.

"That said Barney has control of claims upon other lands for defendants and other parties in the same manner as the lands mentioned in plaintiff's petition, and that said Barney does not in such cases claim to have any good defense to the claim of the right to redeem in such cases, but only defends these cases, including this case, in order to intimidate the owners of the lands, so that they will be willing to settle on the terms proposed by said Barney. And that this deponent says that he has been permitted to copy a letter of said Barney to attorneys in relation to a case similar to this, and that the following is a true copy of a part of said letter relating to the object and manner of defense proposed in such cases. Said letter being dated May 24, 1870:

" Of course there is a chance of your being able to remove the cloud from the title by suit, but in that case we shall put this into the ring which has been arranged to defend the tax title suits, and share the costs *pro rata*, and carry it (the case) up to the United States supreme court. Now, query, would it not be much better for you to redeem the land at less than the costs of a suit,

and have it clear at once, than to keep it 'locked up' two or three years? I know you are speculating on the land, and the sooner you clear the title the sooner you will realize your profit from it.        (Signed)

"W. J. BARNEY."

And deponent further says, "that the only claim defendants can have upon said land is by reason of tax deeds, and in them it is shown that more than forty acres were sold and conveyed 'in a lump,' and they are therefore void. And deponent says he bought said land in good faith, and paid full value for it, less the amount required to redeem the same from said tax sale, and that the sum demanded by said Barney, in behalf of defendants, is an arbitrary sum, having no relation to the amount paid at the sale and subsequent taxes, and that plaintiff's grantor was in possession and had made improvements upon the same, and that this deponent is in possession thereof and has made further improvements thereon.        (Signed)

"GEORGE ORDWAY."

Duly sworn to.

The motion seems to have been continued until the September term, 1870, at which time the defendants file the further affidavit of J. M. Griffith, viz.:

"I, J. M. Griffith, being duly sworn, say that I am counsel for the defendants in this suit, and have just read the affidavit of the plaintiff and attorney, George Ordway, Esq., filed in this cause in resistance of defendants' motion to set aside the default entered; that it is not true that I admitted to plaintiff or any one that defendants had not a good defense in this suit, and that I, or we, did not expect to beat him in the end; nor is it true that, on the occasion referred to in plaintiff's affidavit, or at any other time, I used words either to him or any one substantially as he avers, or remotely to that effect.

"I further depose that, at the time when the plaintiff called at my office and gave me the copy of petition, I knew

nothing either of plaintiff's case nor of defendants' defense, not having till then seen either the original or a copy of plaintiff's petition, nor did I then read it; and to have admitted to plaintiff, on his own statement of his own case, that defendants had not a good defense and that I expected to be beaten in the end, would have evidenced more stupidity in me than I claim credit for, more confidence in the veracity of the plaintiff than he would expect of the friends that know him.

"I further depose that it is untrue that W. J. Barney has control of the interest or claim of the defendants, in or to the lands involved in this suit, further than as a special agent to sell their interest in the same.

"I further depose, that having examined into the facts and merits of this case, the defendants have a good and meritorious defense to this suit—a good and valid title to the property in question, and can so show to the satisfaction of the court, in the further progress in the case.

"I further depose, that the failure or omission on the part of defendants' attorneys to answer in time at the first term after the commencement of this suit was not the result of negligence, but of the accidental misplacing of the papers in the case whereby they were overlooked, and not discovered till near the close of the last term, the same being the first term after the commencement of this suit; and immediately on the discovery, the motion to set aside the default was made, and within three or four days after the default was taken.

"I further depose, that neither defendants nor their attorneys seek any delay, but are ready to plead instanter, and have the cause referred at once for the taking of evidence.

"J. M. GRIFFITH.

"Subscribed by J. M. Griffith, in my presence, and by him sworn to before me, this 20th day of September, 1870.

"FRANK WILLIAMS,

"*Deputy Clerk, D. C.*"

The motion was then continued until the December term, 1870, when the defendants filed an answer alleging that they are the owners of the land mentioned in the plaintiff's petition, by virtue of the tax deed mentioned and described therein, and that the plaintiff has no interest in or claim to said lands which would authorize him to redeem the same.

The court thereupon overruled the defendants' motion, and they appeal.

*Griffith & Knight* for the appellants.

*George Ordway, pro se.*

MILLER, J. — The court below has a large discretion in acting upon motions to set aside defaults, and it should never be exercised in favor of a party in default in consequence of his own negligence, or that of his attorney. *Bolander* v. *Atwell*, 14 Iowa, 35 ; *Kreisinger* v. *The Icarian Community*, 16 id. 586 ; *McNulty* v. *Everett & Moore*, 17 id. 581.

Our statute provides that defaults may be set aside on such terms as the court may deem just, etc., but not unless an affidavit of merits is filed, and a reasonable excuse shown for making default, nor unless application therefor is made at the term at which the default was entered. A naked default, on which no judgment has been entered, may be set aside at any time on proper grounds. *Harper* v. *Drake*, 14 Iowa, 534; *Simmons* v. *Church, ante.* But, when a judgment has been entered on the default, the motion must be made at the same term the default is entered. Id.

In the case before us the defendants have complied strictly and fully with the requirements of the statute. They show that it was their intention to make defense to the action, that there was no negligence of either party or

attorney; that their failure to put in an answer within the proper time was purely accidental; and that, upon the first discovery of the fact that such time had passed, they were prompt in making application to set aside the default.

The application also showed that the defendants had a meritorious defense, and that it was made at the term at which the default was entered. Upon this showing the default should have been set aside, and we are of opinion that, in overruling the motion of defendants, the court exceeded the limit of its discretion.

Whether applications to set aside defaults may be resisted by counter affidavits, as in this case, we do not decide, as the question is not made; but, acting upon the theory that such a practice is allowable, we hold that there is nothing in the counter affidavit of plaintiff which weakens the case made by appellants, the judgment of the district court is

Reversed.