C. A. BARTO, Appellant, v. SIOUX CITY ELECTRIC COMPANY, Appellee, and THE IOWA TELEPHONE COMPANY, Appellant.

119   179
s126   241
126   595

Motion to set Aside Default and Judgment:   MISTAKE AND MISUNDERSTANDING GROUND FOR: SUFFICIENCY OF SHOWING.   A motion to set aside a default and judgment where the same are entered as a result of mistake or misunderstanding of the defaulting party should be sustained.   Evidence in the case considered and held to bring it within the rule.

*Appeal from Woodbury District Court.*—HON. F. R. GAYNOR, Judge.

MONDAY, JANUARY 26, 1903.

PLAINTIFF had judgment by default against the Iowa Telephone Company.   That company moved to set aside the default and judgment on the ground of mistake and misunderstanding between the general manager of the company and its general counsel.   This motion was overruled, and the Iowa Telephone Company appeals.—*Reversed.*

*A. J. Van Wagenen* for appellant.

*Henderson & Fribourg* for appellee Barto.

*Wright, Call & Hubbard* for appellee Sioux City Electric Company.

DEEMER, J.—The sole question in the case is the correctness of the court's ruling on the motion to set aside the default and judgment. The action was to recover damages for personal injuries received by plaintiff while acting as a lineman for the defendant company, due to the fact that he came in contact with an iron brace on one of the defendant's poles, which had become charged with electricity, and received a violent shock, which precipitated him to the ground, a distance of some thirty feet, and caused the injuries of which he complains. It is charged in the petition, and, we must assume, was established to the satisfaction of the court, that defendant was negl gent either in the construction or maintenance of the pole, and that plaintiff did not contribute to the injury by any negligence on his part.

The exact claim is that defendant maintained a very tall pole on one of the streets in Sioux City, on which were strung many wires, attached to crossbars affixed thereto; the lower one of which was some thirty feet from the ground. These crossbars were braced with iron braces extending diagonally from the pole to the crossbars. Many months prior to the accident in question the Sioux City Electric Company, operating a light plant in said city, made an upright addition to the pole described, and strung thereon its wires. From the top of the pole, as thus extended, wires ran down to what is known as a "converter," or small iron box, and from the converter extended down until they touched one of the iron braces above described. The wires were run from the top of the pole down to the converter and beyond for the purpose of supplying an adjacent storekeeper with light for his building. The defendant telephone company knew of this situation, and notified the electric company to remove its wires, but that company failed and neglected to do so.

Plaintiff was required to make some changes in the telephone wires, and, having performed his duties, started

to descend.   While in the act of descending, he caught
hold of one of the diagonal iron braces, and received the
shock of which he complains.   It seems that the brace
became charg d with electricity by reason of the insulation
of the electric light wire having become worn by constant
contact with and rubbing against the iron brace.   Action
was brought against both the telephone company and the
electric light company.   Notice of the action was served
on one Clark, the local agent of the Iowa Telephone Com-
pany at Sioux City, who immediately sent the same to E.
B. Smith, general manager of the company, at Davenport,
Iowa.   Thereafter, except as we shall hereafter state,
Clark had nothing to do with the matter.   Smith received
the notice in due course, and took the same to Mr. E. E.
Cook, the general counsel of the company, at Davenport,
with whom he left the notice, together with some other
papers relating to the case.

After talking the matter over, and concluding that
defense should be made, it was agreed that A. A. and A. J.
Van Wagenen, attorneys at law in Sioux City, Iowa, should
be employed to defend this action.   Smith's understand-
ing from the conversation was that Cook should notify the
Sioux City attorneys of the company's desire to employ
them, while Cook understood that Smith should attend to
the matter.   As a result of this misunderstanding, no
attorneys were in fact employed to conduct the defense,
and the case went to judgment as before stated.   There
was no thought that Cook should personally appear in the
case, but it was agreed, as before stated, that local at-
torneys at Sioux City should look after it.   Neither Cook
nor Smith knew of this misunderstanding until after the
judgment has been rendered against the company.   The
motion to set aside the default was accompanied by an
affidavit of merits, and also by a duly verified answer on
behalf of the telephone company, to which we shall
presently make some reference.

On behalf of plaintiff it is shown that Clark had a conversation with one of plaintiff's attorneys before the action was brought, in which the attorney asked Clark to write the company regarding the case; and that, after the notice was served, Clark had a letter from the general manager about the matter, but nothing was said in that with reference to the employment of attorneys. Clark had a conversation with plaintiff before the action was commenced, in which he said that the company was not liable, and that they did not intend to pay any attention to the suit. An attorney for the electric light company also called upon Clark, and tried to interest him in the suit. But Clark said they did not wish to be brought into the case, but that he would write to the company. The company refused to take any part in the matter, and insisted that it was not liable. After the default judgment was obtained, a reporter called up Clark by telephone and informed him of the situation, and Clark responded that the company paid no attention to the matter, and he did not care to recognize it by discussing the case. He said the company had ignored it all the way through. Clark also stated that he presumed that the company knew what it was doing, and that it was probably acting under legal advice. It is manifest that Clark was unfamiliar with the situation and with legal proceedings in general, and his statements must be viewed from that standpoint. One of the agents at the home office wrote Clark, before the case was commenced, that the company would not appear in the matter of claim for damages to plaintiff. This was manifestly intended as a response to the letter written by Clark at the solicitation of the attorney for the electric light company, and referred to a settlement out of court. Smith also wrote Clark not to have any conference with this attorney, preferring to have the matter come to trial in the event the electric company did not settle.

This is practically the entire showing made in the case. With reference to Clark's connection with it after he sent the original notice to the head office in Davenport, it is doubtful if he could make any statements or admissions which would bind the company. He had nothing to do with the litigation, save to receive and forward the notice. After that was done, his connection with the case ceased, and his agency was not broad enough to enable him to bind the company by his admissions. But, should these admissions be considered, it is manifest that they do not show an intent on the part of the company to abandon all defense, and to allow a judgment to be taken against it. Throughout the entire transaction this defendant was denying liability, and all talk about ignoring the case had reference to the claim, and not to any case in court. It did not care to take any part even in an attempt at settlement, for fear this might be construed as a recognition of liability. Everything shown in evidence points so strongly in this direction that a finding to the contrary would be in the teeth of the evidence.

The only question, then, is whether or not the misunderstanding between Smith and Cook, occurring in the manner it did, sufficiently excused the default, and entitled the telephone company to a setting aside of the judgment. Plaintiff insists that the failure of the telephone company to appear was due to negligence and carelessness on its part, and that it should not now be heard to complain; while the telephone company claims that it has excused the default by showing mistake, misunderstanding, and unavoidable casualty or misfortune. Defaults occurring through negligence or carelessness on the part of the judgment defendant or his attorney will not, of course, be set aside, for the law rewards the diligent, and not the careless. Moreover, one who, through carelessness or inattention to duty, brings misfortune upon himself, will not, as a rule, be heard to complain. But it has ever been the

purpose of the courts to relieve from accident, mistake, and misfortune not brought about through neglect or inactivity. There is no difficulty in announcing the general rules which should govern in such applications as this, but trouble arises when attempt is made to apply these rules to the facts of the particular case. Hence it has been said that each case must be determined to a great extent upon its own circumstances. Courts should and do favor the trial of causes upon their merits, and, if failure to secure such trial is not due to the supinity or inattention of the party in default, he should, upon a proper show ing of merits, be given an opportunity to be heard.

On the record before us we must hold that the failure of the telephone company to appear was due to an honest misunderstanding between the general manager, Smith, and the general counsel, Cook, as to who should employ the local attorneys at Sioux City. If this was due to negligence or want of ordinary care and attention, then, of course, the ruling of the trial court was correct, and should be sustained. But if, on the other hand, it was the result of mistake or misfortune, due to the limitations of the human mind, the infirmities of language, or other fortuitous circumstances, not contributed to by negligence or inattention to duty, then the default should have been set aside. We do not have before us the exact conversation between Smith and Cook, but the statement of each under oath is that they talked over the case, concluded there was a good defense, agreed upon the attorneys who were to appear for the company, and that, through misunderstanding as to which of the two men should notify the firm of attorneys at Sioux City to look after the case, no appearance was entered. We feel sure that the company intended to make defense. Indeed, that could hardly be disputed in the face of the record now before us, and plaintiff is not bold enough to claim in argument that the telephone company was seeking to secure some advantage by the

course of procedure adopted in this case.   Of course, mere
forgetfulness of the party or his attorney will not excuse
him.   But misunderstanding or mistake undoubtedly will.
Matters growing out of misunderstanding and mistake are
before us almost every day.   Indeed, we think there is
less of perjury than is commonly supposed.   Misunder-
standing and mistake are common, and conflict in human
testimony is more often due to this than to willful perver-
sion of truth.   The cases generally hold that mutual mistake
or misunderstanding is good ground for setting aside a
default.   *Buena Vista Co. v. I. F. & S. C. R. Co.*, 49
Iowa, 658; *Ordway v. Suchard*, 31 Iowa, 481; *Sitzer v.
Fenzloff*, 112 Iowa, 493; *Bank v. Swan*, 100 Iowa, 718;
*Panesi v. Boswell*, 12 Heisk. 323; *McKinley v. Tuttle*, 34
Cal. 235; *Beatty v. O'Connor*, 106 Ind. 87 (5 N. E. Rep.
880); *Morse v. Callantine*, 19 Mont. 87 (47 Pac. Rep. 635.)
In the *Buena Vista Case* it is said:   "One of the attorneys
testified positively that he did not understand his retainer
extended further than appearance at the first term, and
that he did not regard himself as engaged in the case.   It
is true that the other attorneys had a different under-
standing of the retainer.   The law exacts of attorneys a
diligence in their business, and will not relieve against
negligence on their part.   But it regards attorneys as
mere men, who, with the best of intentions, may be mis-
taken in the most important affairs.   They are not re-
quired to be diligent beyond the capacities of human
nature.   If any diligent, honest attorney misunderstands
the extent of his employment, he ought not to be regarded
as negligent when acting in good faith as to his duty."

Plaintiff relies on *Church v. Lacey*, 102 Iowa, 235;
*Byrnes v. Insurance Co.*, 114 Iowa, 738; *Williams v. West-
cott*, 77 Iowa, 332; *Vinegar Co. v. Boddy*, 108 Iowa, 538,
and other like cases.   Before referring to these, it is well
to state that, to justify interference by this court with a
ruling on a motion of this kind, a much stronger showing

of abuse of discretion in the trial court must be made
when the default has been set aside than where it has been
denied.     Courts almost universally favor a trial on the
merits, and, when there has been a reasonable excuse
shown for the default, there should be no objection to such
a trial to those who are reasonably diligent.     *Westphal v.
Clark*, 46 Iowa, 263.    Returning now to the cases relied
upon by the plaintiff.    In the *Wil iams Case* the attorney
relied upon information, or rather lack of information,
from the clerk of the courts, and was not misled by any
mistake of fact.    It was a clear case of negligence of the
attorney, not superinduced by mistake or misunderstand-
ing.    The *Sioux City Vinegar Co. Case*, 108 Iowa, 538, is
quite similar.    There, as is said in the opinion: ``We
have a case, then, of the secretary of a corporation, not
charged with the management of its affairs, who, being
served with an original notice, tossed it into a receptacle
for the purpose of having a member of a law firm of which
he was also a member prepare an answer and defend,
which notice was by him misplaced by oversight, without
mentioning the action to any one, or giving it the slightest
attention.    That there was no unavoidable casualty or
misfortune appears from a mere statement of the facts.
It was rather a case where the officer on whom the notice
was served forgot or neglected to give the matter any
proper attention.    That under such circumstances relief
cannot be had is well settled.''

The *Church Case* was one of pure forgetfulness on the
part of the attorney, not induced by any misunderstand-
ing.    It is said in that case: ``Mr. Call's failure to
inform Mr. Clark, as he had promised to do, was
not caused by accident, surprise, unavoidable casualty,
or misfortune, but was clearly the result of his own
neglect.''    In the case at bar there was neglect to
appear, it is true, but this failure was wholly due to
misunderstanding.    The only one of the cases which tends

to support plaintiff's contention is *Byrnes v. Insurance Co.*, 114 Iowa, 738.   But in that case there was no mutual misunderstanding between client and attorney.   "The most that can be said is that the secretary of the insurance company thought he had employed an attorney to defend from the fact that he had misplaced the papers connected with the case.   He did not state that he had employed counsel, although he said that he had talked with one two or three times, and he concluded his showing with a statement that the default was due to his misplacing the papers, and to misapprehension on his part as to what had been done."   Of this showing we said:   "About all that is disclosed here is a matter of carelessness and inattention on the part of the officer."   The inapplicability of this case to the facts now before us is apparent.   Here the officer of the company immediately went to the general counsel, talked with him about the case, was advised there was a defense, agreed with counsel as to who should be employed, and supposed from what was said that this counsel would notify local attorneys.   The general attorney, from the same conversation, understood that the officers of the company would notify local counsel.   If this was not a mistake and misunderstanding, it would be hard to imagine a case having these elements.

Plaintiff further contends that a large discretion was vested in the district court in this matter, and that its action denying the motion should not be reversed, in the absence of a showing of passion or prejudice.   True it is that such rulings are largely discretionary, but it is also true that this discretion is a sound legal one, which, if erroneously, arbitrarily, or oppressively exercised, will be reviewed, and in the interest of justice and right may be set aside.   We have already referred to the rule that we will be more inclined to interfere when the motion has been denied than where granted, for the very sound and obvious reason that trials on the merits are to be favored.

Further, it is contended that there is no sufficient affidavit of merits; that the answer interposed by defendant presents a mere technical defense, and that on the whole case justice would be subserved by sustaining the action of the trial court. The affidavit of merits accompanying the motion states that defendant was not guilty of any negligence; that plaintiff assumed the risk of the wires in the condition they were in, and was guilty of contributory negligence; and that the electric company was solely responsible for the injury. The motion was also accompanied by an answer, which has been treated by all parties as an affidavit of merits, or as supplementary thereto. This pleads facts which tend to show no negligence on the part of defendant. Whether or not they are sufficient in law we have no occasion now to determine, and do not do so. It also pleads assumption of risk on the part of plaintiff and contributory negligence, and also denies that plaintiff was injured to the extent claimed. These defenses are not technical, but some, if not all, go to the very vitals of the case.

We are constrained to hold that the motion should have been sustained, and the order denying it must be REVERSED.