W. H. REILLEY, Appellee, v. A. L. KINKEAD, Appellant.

JUDGES: Disqualification—Bias and Prejudice. Temporary irrita-
1 tions between counsel and the presiding judge are not sufficient to disqualify the judge.

JUDGMENT: Opening or Vacating—Defaults—Sufficiency of Show-
2 ing—Negligence. A litigant is not *personally* negligent in relying upon a reputable attorney, whom he has duly employed, to take such action as will properly present his defense.

JUDGMENT: Opening and Vacating—Defaults—Negligence of At-
3 torney. Accidental misplacement by an attorney's assistant of the files in a newly commenced cause, with consequent failure by the attorney to appear, and the entry of default judgment, should not be considered negligence on the part of the attorney, and such default should be set aside on prompt motion accompanied by a fair showing of meritorious and good-faith defense.

APPEAL AND ERROR: Notice—Specification of Judgment or
4 Order—Sufficiency. An appeal "from the judgment," without further specification, is sufficient to bring up for review *the order overruling a motion to reopen the judgment by default.*

*Appeal from Woodbury District Court.*—GEORGE JEPSON, Judge.

FRIDAY, NOVEMBER 16, 1917.

From a judgment entered by default, and from the court's refusal to set the same aside and permit defendant to answer, he appeals.—*Reversed and remanded.*

*T. F. Bevington,* for appellant.

*D. H. Sullivan,* for appellee.

Weaver, J.—On March 18, 1916, plaintiff caused original notice to be served upon defendant to the effect that, on or before April 28, 1916, a petition would be filed in the court below demanding a recovery of judgment upon an account for work and labor. The notice was made returnable on the second day of the May, 1916, term of the district court, beginning on the 8th day of that month. The petition was filed April 24, 1916. No appearance being entered or answer filed, the court, Hon. J. W. Anderson, Judge, presiding, entered the defendant's default, and rendered judgment against him on May 24, 1916. On May 25, 1916, defendant appeared by Mr. Bevington, his counsel, and moved to set aside the judgment and default, and for a recall of the execution which had been issued thereon. In the same connection, said counsel offered to pay the costs which had been made in the case, and asked leave to file a verified answer and counterclaim. He also tendered an answer, taking issue on the plaintiff's claim and setting up a counterclaim in an amount equal to or greater than the claim sued upon. The motion was also supported by Mr. Bevington's affidavit, as follows:

"I, T. F. Bevington, on oath depose and say that I was employed by the defendant just a few days prior to the commencement of the May term, 1916, of this court. That the defendant was sent to me, and that, prior to his appearance with the original notice and copy of the petition, I was entirely unacquainted with him; that, on the occasion of his calling at my office, I talked with him about ten

minutes and turned him over to Norman Lewis, my second assistant, for the purpose of having Mr. Lewis take down a statement of his defense and counterclaim, which Mr. Lewis did.  That, just prior to the commencement of the May term of said court, and for ten days thereafter, an exceedingly large number of new cases were coming into my office, wherein I was employed in some instances for the plaintiff, and some for defendants; that, because of the exceedingly large office calendar kept and maintained by me as an attorney, I have for some time been obliged to have two assistants, a regular stenographer, and on many occasions an extra stenographer.  That the stenographer at that time employed was one Kittie Gardner, who has recently come to my office from her home at Rock Rapids, Iowa; that, at the very beginning of the May term, I was making an effort, with the aid of my two assistants, to have Miss Gardner file in their proper order actions in which I was interested for plaintiffs, and also in their proper order actions in which I was interested for the defendants; that, according to my usual practice, I first prepare the matters and things coming up at the May term in actions where I represent the plaintiffs, and then look after the matter of appearance, making the motions, demurrers or filing answers in matters where I appear for defendants; that, in accordance with my usual custom, I had one basket on my desk wherein the papers in connection with the new causes of action in which I appeared for plaintiffs are kept, and one basket wherein the papers in actions where I appeared for the defendants are kept.  That I had never met the defendant in the instant case before, and gave him such a short interview, that personally, in looking over the papers and pleadings, was not sufficiently advised with reference to the same to know whethit was the plaintiff, W. H. Reilly, or the defendant, A. L. Kinkead, that I had been employed to represent.  That the original notice, copy of the petition, and all the papers connected

with this instant case were by some of my assistants put
into the usual folder, but that the same, for some reason
unknown to me, were filed under the name of W. H. Reilly,
and with the causes of action in which I represented the
plaintiffs. That for this reason I was not aware until yes-
terday, May 22d, while engaged in an argument in an import-
ant case before Judge Sears, that the interests of my client,
A. L. Kinkead, had not been looked after, and that the ap-
pearance had not been made for him in said cause. That,
about three o'clock in the afternoon of May 22d, Mr. Kin-
kead came to the north court room, where I was engaged
in the argument as aforesaid, and in a few seconds' con-
sultation advised me as to the situation. That, upon ad-
journment of court, I immediately took the matter up with
my office force, and found the facts to be as hereinbefore
stated. That in this action execution has been issued, and
the sheriff has levied on the automobile belonging to the de-
fendant. That the judgment entered by default is for the
principal sum of $129.29, and the costs of the action. That
in all my practice a default has never been entered against
one of my clients. That, unless the default and judgment
entered thereon is set aside, I will feel it my duty to pay the
judgment and costs out of my own pocket, for the reason
that my client informs me that he has a complete defense,
and in addition to that, a counterclaim against the plaintiff
for the sum of $———. That my client, the defendant, has
signed and sworn to an answer and counterclaim verifying
his former statements to Mr. Lewis of my office, which were
by Mr. Lewis, at the time, reduced to writing. That my
assistant, Mr. Lewis, is a lawyer who has been admitted to
the bar in the state of South Dakota, but has not been ad-
mitted to the bar in the state of Iowa, and heretofore I have
not directed him to, or intrusted him with making appear-
ances, preparing, signing or filing papers of pleading in my
stead. That I opened up my office here the last time on or

about December 1st, 1915, and my office force of necessity is under process of organization. That, under the foregoing circumstances, I am willing personally to páy the costs incurred by reason of the failure on my part to appear for the defendant, and file his answer and counterclaim. That I, therefore, join with my client, the defendant, in asking the court to sustain the motion herewith filed to set aside the judgment under the terms herein indicated."

To this motion plaintiff objected, on grounds to the effect that the failure of defendant to appear and answer was due to no unavoidable casualty or misfortune, but to the negligence of himself and his counsel.

This motion and resistance were submitted to the court, Judge Anderson presiding, on June 2, 1916. On the same day, Judge Anderson, for some reason, passed the matter of said motion over to Judge George Jepson, also holding court at the same term, who on the same day entered an order overruling it, the order, as we understand it, being entered in the absence of counsel. On the next day, Mr. Bevington recalled the attention of the court, Judge Jepson presiding, to the case, and was proceeding to make a statement of some sort when a colloquy developed between him and the court which excited an apparent display of feeling on both sides. The court finally dictated into the record its version of the circumstances under which the decision of the motion had been passed over to Judge Jepson by Judge Anderson, and announced to counsel that the ruling thereon was set aside, and the matter was open for counsel to be heard. Mr. Bevington, apparently desiring to have the matter heard before another judge, asked for time till Monday morning to counsel with his client, and his request was denied, but the court finally gave him ten minutes in which to present an affidavit for change of forum. The affidavit was filed, setting forth counsel's belief that Judge Jepson was so prejudiced against him that his client could not get a fair and impartial ruling

on the motion. The court, denying any feeling of partiality or prejudice in the matter, overruled the motion for a change. This was followed by further statements made of record by Mr. Bevington and by the court, which again overruled the motion to set aside the judgment and default. The defendant appeals.

**1. JUDGES: disqualification: bias and prejudice.**

I. We are not disposed to give much time or attention to the alleged error in refusing a change of forum. The motion seems to have had its impulse in the irritations of the moment, growing out of an unfortunate impression on the part of counsel that his motion to set aside the default which had been entered against defendant was not being given the consideration to which it was entitled, and upon the part of the court that counsel was unjustly imputing to it a lack of judicial fairness, with the result that the attitude taken and the language employed on both sides were marked with a considerable degree of asperity. We think, however, that no sufficient showing was made for a change of forum, and there was no error in the ruling in this respect.

**2. JUDGMENT: opening or vacating: defaults: sufficiency of showing: negligence.**

II. A more serious question arises upon the overruling of the defendant's motion to set aside the default. Upon the showing made, it cannot be doubted that defendant and his counsel intended in good faith to appear and make defense to this action. So far as the defendant personally is concerned, we think he can be charged with no fault or neglect in depending upon his counsel, whom he had employed for that purpose, to take such action in court as was necessary to protect his interests.

**3. JUDGMENT: opening or vacating: defaults: negligence of attorney.**

The one debatable question in the record is whether Mr. Bevington was negligent in such a sense or to such a degree that relief from the default should be denied his

client. The courts are not disposed to be overtechnical in denying hearing to a party who, in good faith and without negligence, desires and intends to try his case upon its merits. It has been said by us that "a trial on the merits should be had in all cases where it is possible, and particularly where there is failure to show negligence on the part of the party in default." *Logan v. Southall,* 137 Iowa 372, 374. It has also been held that the mistake of the attorney, even though it relates to a matter of which he is required by law to take notice, may afford good ground for excusing a default. *Jean v. Hennessy,* 74 Iowa 348. Where, by mistake, the general attorney of a defendant failed to notify a local attorney to enter an appearance, and judgment was obtained by default, this court reversed the ruling of the trial court in refusing to set aside the judgment and open the default. In so doing, we said:

"On the record before us, we must hold that the failure of the telephone company to appear was due to an honest misunderstanding between the general manager, Smith, and the general counsel, Cook, as to who should employ the local attorneys at Sioux City. If this was due to negligence or want of ordinary care and attention, then, of course, the ruling of the trial court was correct, and should be sustained. But if, on the other hand, it was the result of mistake or misfortune, due to the limitations of the human mind, the infirmities of language, or other fortuitous circumstances, not contributed to by negligence or inattention to duty, then the default should have been set aside. * * * Of course, mere forgetfulness of the party or his attorney will not excuse him, but misunderstanding or mistake undoubtedly will." *Barto v. Sioux City Elec. Co.,* 119 Iowa 179.

In a somewhat similar case, we said:

"The law exacts of attorneys diligence in their business, and will not relieve against negligence on their part;

but it regards attorneys as mere men, who, with the best of intentions, may be mistaken in the most important affairs. They are not required to be diligent and careful beyond the capacities of human nature. If an honest, diligent attorney misunderstands the extent of his employment, he ought not to be regarded as negligent when acting in good faith upon his belief as to his duty." *County of Buena Vista v. I. F. & S. C. R. Co.,* 49 Iowa 657.

It has often been said by this and other courts that courts should be disposed to give a party a trial on the merits of his case if application to set aside the default be promptly made and the party is not clearly shown to have been negligent. *McQuade v. Chicago, R. I. & P. R. Co.,* 78 Iowa 688. Very similar in its facts to the case at bar is *Ordway v. Suchard,* 31 Iowa 481, where it was shown that defendants retained a firm of lawyers to appear for them, but, by mistake on their part, a default and decree were rendered in favor of the plaintiff. The showing made to excuse the default was that the failure of the attorneys to appear was occasioned by the accidental misplacing of the papers in the case, with the result that, when counsel, at the opening of the term, examined their records to ascertain what cases required their attention, this one was overlooked, although they in good faith intended to make a defense. The trial court overruled the motion to set aside the default, and that ruling was reversed on appeal. The opinion, while recognizing the rule that the granting or denial of such motion is largely a matter of discretion in the trial court, says that the defendants "show that it was their intention to make defense to the action; that there was no negligence of either party or attorney; that their failure to put in an answer within the proper time was purely accidental; and that, upon the first discovery of the fact that such time had passed, they were prompt in making application to set aside

the default. The application also showed that they had a meritorious defense, and that it was made at the term at which the default was entered. Upon this showing, the default should have been set aside, and we are of the opinion that, in overruling the motion of defendants, the court exceeded the limits of its discretion."

See, to the same effect, *Krause v. Hobart*, 173 Iowa 330; *Klepfer v. City of Keokuk*, 126 Iowa 592, 595; *Jean v. Hennessy*, 74 Iowa 348, 350; *Peterson v. Koch*, 110 Iowa 19; *Mully v. Roberts*, 167 Iowa 523, 524; *Farmers Exch. Bank v. Trester*, 145 Iowa 665, 668; *Norman v. Iowa Cent. R. Co.*, 149 Iowa 246; *Ennis v. Fourth St. Bldg. Assn.*, 102 Iowa 520. In the *Peterson* case, it is distinctly held that, where the defendant in good faith desires to defend an action brought against him, and retains counsel who undertake to represent him for that purpose, and, without notice to or knowledge of their client, fail to enter an appearance or make any defense, and permit the case to go by default, the negligence or failure of counsel, under such circumstances, is an unavoidable casualty or misfortune, within the meaning of the statute, Code Section 4091, and entitles the client, on such showing, to have the default set aside.

Without extending these references, we think it very clearly appears that the present case comes well within the rule applied by this court on numerous occasions, and particularly in the several cases which we have cited. It may fairly be said to be shown without dispute that there was no negligence on the part of defendant or his counsel. It does show a mistake on part of counsel, but mistake or oversight is not necessarily negligence. While the law does exact diligence and attention on the part of the lawyer accepting employment in any case, it is only such as may reasonably be expected of a man acting in good faith and with the care and caution which may fairly be required of the average man who undertakes to perform such duty or ser-

vice. The lawyer who has a clientage of any considerable proportions and is engaged in a general practice may properly, and indeed must, depend to a large degree upon his office force to keep his work and his records systematized and his papers properly preserved and pigeonholed; and if, as a term of court approaches, and he lists the matters which require his attention therein, the misplacement of a paper or file leads him, without fault on his part, to overlook the necessity of an appearance in a new case with which he has not yet become thoroughly familiar, he ought not to be held chargeable with negligence, and his failure so caused is not to be imputed to his client as negligence. Such is the doctrine of the cases we have cited. It is, moreover, a rule of reason and fairness, and in perfect harmony with the purposes for which courts of justice are established and maintained.

The appellee made no attempt to discredit the truth of the showing made in support of the motion to reopen the case, and we have to deal with the case on the theory that the facts are as there stated. On a showing decidedly less persuasive, this court said, in the *Ordway* case, supra, that no negligence of either counsel or client was shown, and the ruling of the trial court to the contrary was reversed. So also in the *Barto* case, the *Ennis* case and the *Norman* case. The application was timely, the showing of a defense upon the merits was sufficient, and in our judgment the motion should have been sustained.

III. Appellee raises a question of the jurisdiction of this appeal, because the notice of appeal states that it is taken from the judgment, and makes no specification of the ruling to set aside the default.

4. APPEAL AND ERROR: notice: specification of judgment or order: sufficiency.

We are of the opinion that the point is not well taken. It is well settled that a ruling upon a

motion for new trial, though itself appealable, may also be reviewed upon an appeal from the judgment, if taken within the time prescribed by law (*Mueller Lbr. Co. v. Mc-Caffrey,* 141 Iowa 730, *Powers v. Des Moines City R. Co.,* 143 Iowa 427, 430); and, if a denial of a motion for new trial may be reviewed on appeal from the judgment, we can see no good reason why the denial of a motion to reopen a judgment entered by default, which is, in effect, an application for new trial, may not also be so reviewed. Judgments are usually entered at once upon return of verdict or entry of default, and motions made in due time to set them aside may, for many purposes, be treated as if made at the same time, and ruling thereon be, in legal effect, as if then made, or as inhering in the judgment entry; although, under our peculiar statute, the aggrieved party may, if he choose, appeal from the judgment or from the denial of his motion for new trial, and in either form secure a review of the alleged errors.

The objection to the jurisdiction of this court is overruled and the judgment below is reversed. The cause will be remanded to the district court, with directions to set aside the judgment and default and permit the defendant to answer.—*Reversed and remanded.*

GAYNOR, C. J., PRESTON and STEVENS, JJ., concur.