Larry D. MADSEN, Appellee,

v.

**LITTON INDUSTRIES, INC., and Litton Industrial Automations Systems, Inc., Appellants,**

and

Litton Vongal Palletizers, Inc., and Litton Industries, Inc. d/b/a Vongal Palletizers, Defendants.

No. 91–1958.

Supreme Court of Iowa.

April 21, 1993.

As Revised on Denial of Rehearing May 14, 1993.

Rehearing Denied May 14, 1993.

Mark McCormick and Margaret C. Callahan of Belin, Harris, Lamson & McCormick, P.C., Des Moines, and Donald G. Thompson of Bradley & Riley, P.C., Cedar Rapids, for appellants.

James E. Bobenhouse, Cedar Rapids, and Beverly Ogren, Cedar Rapids, for appellee.

LARSON, Justice.

Larry D. Madsen was injured by a machine known as a palletizer manufactured and sold by defendants, Litton Industries, Inc. and Litton Industrial Automations Systems, Inc. Madsen filed a petition in Linn County District Court and served original notices on the defendants. When the defendants failed to appear, a default judgment was entered against them. The defendants, to whom we will refer collectively as Litton, moved to set aside the default under Iowa Rule of Civil Procedure 236. The district court denied relief, and the court of appeals affirmed. We affirm the court of appeals and the district court.

The affidavits filed in support of and resistance to the motion to set aside the default establish the following facts. Madsen's accident occurred on December 15, 1988. In November 1989, Madsen's attorney wrote to "Litton Vongal Palletizers" in Montgomery, Alabama, notifying it of his intention to make a claim. Although Litton Vongal Palletizers is not a legal entity in itself, the letter was brought to the attention of John Hilinski, who was Litton's counsel in its automation systems office in Kentucky. Litton Industrial Automation Systems is the entity that actually had manufactured the palletizer. Litton Automation is a wholly owned subsidiary of Litton Industries, Inc.

Hilinski notified the Hartford Insurance Company of Madsen's claim, and Hartford in turn notified Madsen's attorney that Hartford would investigate the matter.

Hilinski also advised Litton's associate director of litigation, Steven H. Estabrook, of the Madsen claim. Estabrook's office is located at the Litton Industries corporate headquarters in Beverly Hills, California. Estabrook was directly responsible for the supervision and handling of all litigation by and against Litton. In Beverly Hills, the litigation department was comprised of four attorneys and six support staff members. When product liability claims are involved, according to Litton, Hartford coordinates the adjustment of claims in coop-

eration with Litton's corporate risk manager.

On December 12, 1990, Madsen's attorney, James Bobenhouse, wrote to Hartford to say that a petition had been filed. A copy of the petition was enclosed. Bobenhouse advised Hartford that original notices would be served on Litton if settlement was not reached within two weeks. The claim was not settled, and Bobenhouse began service of process.

Three original notices were served by Bobenhouse. The first, on February 20, 1991, was served on "Litton Vongal Palletizers" in Montgomery, Alabama. Although there is no such entity as Litton Vongal Palletizers, Litton's palletizers are made in Montgomery, Alabama, and the original notice served on Litton Vongal Palletizers was sent to Attorney Hilinski in Litton's Hebron, Kentucky, office. The second notice was served, on March 7, 1991, on Litton Industrial Automation Systems, Inc. in Hebron, Kentucky. This notice was also brought to the attention of Hilinski. A third original notice on March 27, 1991, was served directly on Litton at its headquarters in Beverly Hills, California.

Litton failed to appear, and the court entered a default judgment against it. Litton moved to set aside the default under Iowa Rule of Civil Procedure 236:

> On motion and for good cause shown, and upon such terms as the court prescribes, but not ex parte, the court may set aside default or the judgment thereon, for mistake, inadvertence, surprise, excusable neglect or unavoidable casualty. Such motion must be filed promptly after the discovery of the grounds thereof, but not more than sixty days after the entry of the judgment. Its filing shall not affect the finality of the judgment or impair its operation.

If a district court refuses to set aside a default, as it did here,

> [w]e can interfere with the court's determination of evidentiary insufficiency only if we find the evidence is so overwhelming that the [movant] carried their burden of proof *as a matter of law.*

*First Nat'l Bank v. Claiser,* 308 N.W.2d 1, 3 (Iowa 1981) (emphasis added).

Steven H. Estabrook, Litton's associate director of litigation, stated in his affidavit that he first learned of the Madsen claim in November 1989. Customarily, he stated, a "claim file" is opened prior to actual litigation to permit the litigation department to "track the progress of the claim." He felt that this case would not settle in the claim stage and that litigation was imminent. His affidavit continued:

> Therefore, on January 23, 1991, I opened a Litigation Department "claim file." However, the file was erroneously assigned an active "litigation file" number—rather than a "claim file" number. Claim file numbers commence with L–8 followed by three digits (*i.e.,* L–8001), and active litigation file numbers commence with L–2 followed by three digits (*i.e.,* L–2001).

■ Litton concedes that the original notice served on the Beverly Hills office was "mistakenly" handled by its legal staff. It attempts to shift the blame for the resulting default, however, to Hartford because Hartford had not notified Litton that a petition was on file. The insurer's negligence, Litton claims, may not be "imputed" to Litton. The problem with this argument is that there can be no default until an original notice has been served, and Hartford had no way of knowing of the service of the original notices in this case. Litton simply failed to tell Hartford that it had been served with the original notices.

■ A party seeking to set aside a default judgment on the basis that the party's insurance carrier was at fault must show that the party had forwarded the suit papers to the insurer or informed the insurer in some other way that action on behalf of the defendant was necessary to prevent a default. *See generally* Annotation, *Failure of Liability Insurer, After Notification, to Defend Suit Against Insured, as Warranting Opening Default Against Insured on Ground of Inadvertence or Excusable Neglect,* 87 A.L.R.2d 870, 872–73 (1963). In this case, Litton did not notify Hartford that Litton had been served. The

negligence of Hartford, if any, was not the primary cause of the default. There is substantial evidence to support the trial court's finding of primary negligence on the part of Litton.

The original notice served on Litton's Beverly Hills office was stamped with Estabrook's name and simply placed in the Madsen claim file. The two notices received by Litton's Hebron, Kentucky, office were also placed in a file without any response. Neither lawyer made any contact with Litton's insurance company, filed an appearance or answer, or retained outside counsel. Hilinski, Litton's Kentucky attorney, did not even inform Estabrook, at the corporate headquarters, that Hilinski's office had been served.

Litton claims that it did not act to prevent a default because, when the original claim file was opened in the Beverly Hills office in January 1991, there was a mistake in the file label. Instead of showing claim No. L–8558, which indicated a pre-suit *claim*, the file showed claim No. L–2558, which indicated that the case was already in litigation. According to Estabrook, this caused the Beverly Hills legal staff to believe that the original notice received in March had no legal significance because the case was already in litigation.

In Kentucky, Hilinski understood from a "memo to the file" (which is not a part of our record) that the case was already in litigation. Hilinski, apparently believing the original notices that he had received had no legal significance, simply placed them in a file and did nothing more.

How Estabrook and Hilinski could reasonably have thought the plaintiff would go to the trouble of serving "extra" original notices after the case was already in litigation is a mystery. Even if the mistake on the label of the Madsen claim file erroneously conveyed the impression that the case was already in litigation, this does not establish as a matter of law the "mistake, inadvertence, surprise, excusable neglect or unavoidable casualty" required by rule 236.

There are additional facts that support the district court's conclusion that good cause was not shown. The court could well have found negligence in ignoring a file for six months, regardless of *what* its label said. This is illustrated by the fact that, well over a month before the default judgment, Hartford Insurance advised Estabrook that Madsen's attorney had made a demand for $30,000. Hartford asked Estabrook to review the file, but Estabrook failed to do so. If he had, he would have discovered the original notice in time to avoid the default judgment.

Because the district court found that Litton's affidavits were inadequate to sustain its burden under rule 236, and substantial evidence supports those findings, we must affirm the denial of Litton's motion. *See Claiser*, 308 N.W.2d at 3.

## DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.

All Justices concur except ANDREASEN and NEUMAN, JJ., who dissent.

ANDREASEN, Justice (dissenting).

I respectfully dissent.

I believe the majority has restricted the application of Iowa Rule of Civil Procedure 236 by adopting an extremely narrow view of "good cause." The spirit of this rule is not served by such judicial construction. The purpose of rule 236 is to permit a controversy to proceed to a determination on its merits rather than on the basis of nonprejudicial inadvertence or mistake. *Whitehorn v. Lovik*, 398 N.W.2d 851, 853 (Iowa 1987). We take a liberal approach in granting relief for defaults for the very sound and obvious reason that trial on the merits is favored. *First Nat'l Bank v. Claiser*, 308 N.W.2d 1, 3 (Iowa 1981) (Uhlenhopp, J., dissenting) (We, like the federal courts, under Federal Rule of Civil Procedure 60(b) should readily grant relief from defaults "in order to get to the merits and avoid harsh results.").

Here, the appellants urge the reason they failed to appear is because of mistake and excusable neglect. I agree.

The district court found the following facts. Madsen filed his lawsuit against Litton Industries, Inc. and its subsidiaries

on December 12, 1990, after a prolonged attempt to settle his claim with Litton's insurance carrier Hartford Insurance Company. Madsen's letter, dated December 12, 1990, to Hartford's claim representative advising the insurance carrier that a petition had been filed by Madsen was not disseminated either to Litton and its subsidiaries, or to Hartford's senior claims supervisor. After discussing the Madsen claim with Hartford's senior claims supervisor, attorney Estabrook of Litton's litigation department in Beverly Hills, California, opened, in January 1991, a file on the claim. The file was mistakenly labeled as a litigation file and a memo regarding the opening of this file was circulated to attorney Hilinski of Litton's subsidiary in Kentucky. When Hilinski received the Madsen original notices served on Litton's subsidiaries in February and March of 1991, he assumed these matters were being handled by Estabrook and no action was taken. On March 27, 1991, an office administrator accepted service of the original notice on Litton in California and placed the notice and petition in the Madsen file without calling the notice to Estabrook's attention. Default was taken by Madsen against Litton on April 27 and against Litton's subsidiary on May 9. Default judgment in the sum of $137,173.75 was entered against the defendants on June 19, 1991.

These additional facts are undisputed in the record. On May 31, Estabrook received a letter, dated May 13, from Hartford asking that he review the Madsen file. Estabrook requested his secretary to locate the file. The file was not delivered to him before he left for San Francisco where he remained during the first three weeks in June. He was advised of the default judgment on June 27. He immediately employed Iowa counsel who promptly filed a motion to set aside the default. The file identification system used by Litton for receiving and handling original notices has worked successfully for nine years while handling over 500 claims. Under this system a "claim" file is changed to a "litigation" file once a lawsuit is filed and served.

The district court concluded that good cause had not been shown because:

Many trained professionals were presented with knowledge of the pendency of this lawsuit. No one took the initiative to communicate. There should have been no confusion and it was reasonable to expect that out of all of the various people involved, someone would have taken reasonable steps to make inquiry about the pendency of the lawsuit and its status. Nevertheless, no one chose to do so.

The Iowa Court of Appeals stated: "In general the failure to appear was caused by a lack of organization, a lack of coordination and a lack of communication. We simply do not find these factors constitute 'good cause.'" The majority opinion suggests that the district court's finding that Litton was negligent supports the conclusion that Litton had failed to show good cause.

I believe the record establishes that the failure of Litton to appear and defend was the result of mistake and excusable neglect. The district court and appellate courts agree the mislabeling of the Madsen claim file was a mistake. Excusable neglect is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence or fault. *Whitehorn*, 398 N.W.2d at 854; *see also Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) ("excusable neglect" defined under bankruptcy rule 9006(b)(1) and as used in Federal Rule of Civil Procedure (60)(b)).

Many years ago our court recognized a system may fail as a result of a mistake in the office force. *Reilley v. Kincaid*, 181 Iowa 615, 165 N.W. 80 (1919). In *Reilley*, an office employee mistakenly filed a case under the wrong name. This caused the defendant's counsel to fail to appear. The trial court refused to set aside the default. In reversing the trial court, this court stated:

The lawyer who has clientage of any considerable proportions and is engaged in a general practice may properly, and indeed must, depend to a large degree upon his office force to keep his work

and his records systematized and his papers properly preserved and pigeonholed, and if as a term of court approaches and he lists the matters which require his attention therein, the misplacement of a paper or file leads him, without fault on his part, to overlook the necessity of an appearance in a new case with which he has not yet become thoroughly familiar, he ought not to be held chargeable with negligence, and his failure so caused is not to be imputed to his client as negligence.... It is, moreover, a rule of reason and fairness and in perfect harmony with the purposes for which courts of justice are established and maintained. *Reilley*, 181 Iowa at 624, 165 N.W. at 83.

Counsel for Litton could reasonably rely on the office system for receiving and handling original notices as a means of avoiding a default judgment. Estabrook requested a claim file be opened. He did not know the Madsen suit had been filed. Hilinski and other staff persons reasonably believed the Madsen claim was in litigation and that Estabrook was handling it. If their conduct was careless or negligent, it was excusable under the circumstances.

Here, as in most cases involving rule 236, the court makes findings of fact based upon the pleadings and affidavits filed by the parties. As in this case, most statements included in the affidavits are not disputed. The question then becomes what conclusions can be drawn from the undisputed facts and the disputed facts that the court finds believable. Here, the district court concluded that Litton had failed to establish "good cause." This is not a finding of fact but is a legal conclusion drawn from the facts. We should not be bound by the district court conclusion that the affidavits were inadequate. I would vacate the court of appeals decision and reverse the district court ruling.

NEUMAN, J., joins this dissent.