In re the Marriage of Katherine
Marie COTLEUR, Appellant,

v.

Andrew Carter DANZIGER, Respondent.

No. 75876.

Supreme Court of Missouri,
En Banc.

Jan. 25, 1994.

As modified on Denial of Rehearing
Feb. 22, 1994.

Steven Hobson, Ronald J. Stites, Kansas City, for appellant.

John Dennis, Jr., Karen M. De Luccie, Independence, for respondent.

COVINGTON, Chief Justice.

This case arises from a dissolution of marriage proceeding initiated by Katherine M. Cotleur against Andrew C. Danziger. Ms. Cotleur appealed from an order overruling a motion to set aside the judgment entered in the dissolution proceeding. The issues are whether the judgment entered in the case was a default judgment, and whether the attorney in the case abandoned his client so that his inexcusable neglect would not be attributable to the client. The Missouri Court of Appeals, Western District, affirmed in part and vacated in part. The western district's opinion conflicts with the eastern district's opinions in *Schulte v. Venture Stores, Inc.*, 832 S.W.2d 13 (Mo.App.1992), and *Hoskin v. Younger Cemetery Corp.*, 838 S.W.2d 476 (Mo.App.1992). This Court sustained appellant's application for transfer. Judgment of the trial court is affirmed.

The parties were married on May 19, 1985, and had a daughter approximately one year later. On June 5, 1990, Ms. Cotleur filed a petition for dissolution of marriage. Mr. Danziger filed an answer and a cross-petition. Ms. Cotleur filed a timely answer to the cross-petition. The parties participated in pretrial discovery.

Ms. Cotleur's first attorney withdrew by leave of court, after which Ms. Cotleur engaged the services of L. Michael Kelly. Mr. Kelly failed to enter his appearance on Ms. Cotleur's behalf. Mr. Danziger's attorney secured a trial setting and, unaware of Mr. Kelly's representation of Ms. Cotleur, sent notice of the trial setting directly to Ms. Cotleur. Ms. Cotleur telephoned Mr. Kelly and told him of the trial setting.

No one appeared on behalf of Ms. Cotleur on the scheduled date of the hearing on September 25, 1991. The trial court proceeded with the hearing, at which Mr. Danziger testified and offered twelve exhibits. The trial judge questioned Mr. Danziger about the parties' property, child custody, and support. In a decree entered on September 30, the court dissolved the marriage, apportioned property, and entered an order of joint physical and legal custody of the minor child. In lieu of child support as directed by the child support guidelines in *Rule 88.01*, the court ordered Danziger to pay the cost of tuition at a private school the child attended.

On October 25, 1991, attorney Kelly entered his appearance and filed a motion to set aside the judgment, which he denominated a default judgment. Attached to and included in the motion to set aside the judgment was a copy of a report of a social worker expressing concerns of possible sexual interaction between the child and her father. The motion was not heard until November 18, 1991. At the motion hearing Kelly testified that he failed to appear at the scheduled dissolution hearing because he was out of town on other matters, that he thought the September 25 court date was simply a

docket call, not a trial, and that he had asked another lawyer to appear on Ms. Cotleur's behalf to obtain a continuance. The other lawyer, however, testified that he had no recollection of being asked to appear. The trial court overruled Ms. Cotleur's motion to set aside the judgment. The court did not specify under which rule it based its order, but it did state that there was "no, absolutely no excusable neglect."

Mr. Kelly filed an untimely appeal which the Missouri Court of Appeals, Western District, dismissed. Ms. Cotleur discharged Kelly and retained new counsel. On motion, the western district reinstated Ms. Cotleur's appeal. The western district affirmed the trial court's order as to the property settlement and dissolution decree, but vacated and remanded the matter for appointment of a guardian ad litem and further proceedings on the custody, visitation, and child support issues.

Ms. Cotleur contends on appeal that the trial court's judgment was a default judgment, that she showed good cause and a meritorious defense, and, therefore, the motion court abused its discretion under *Rule 74.05* by denying her request to set aside the judgment. Ms. Cotleur argues in the alternative that the motion court's order violated *Rule 74.06(b)* because she was not guilty of "inexcusable neglect" and her counsel's neglect is not imputable to her because he abandoned the defense of the case without notice to her.

■ *Supreme Court Rules 74.05, 74.06, and 75.01* each provide procedural means by which to set aside judgments, each rule having its own standard for relief. *Rule 75.01* contains the least stringent standard because it inheres while the trial court retains jurisdiction of the case. The trial court may set aside its judgment before it becomes final, for "good cause." *Rule 75.01*. *Rule 74.05(c)*, governing defaults, requires more, allowing a court to set aside a default judgment for "good cause" *if* the party can show "facts constituting a meritorious defense." (emphasis added). Finally, *Rule 74.06(b)*, as pertinent here, allows a court to set aside a final judgment after a court has ruled on the merits of a case, but only if the party is able

to show excusable neglect. *Rule 74.06(b)* is, therefore, read to require the highest standard of the three rules for setting aside a judgment, giving effect to the interests in stability of final judgments and precedent.

Recognizing that there is much greater liberality in reopening a judgment after a default than in reopening a judgment that comes after a hearing on the merits, Ms. Cotleur seeks to bring her appeal within the purview of the default provisions of *Rule 74.05*. In her motion to set aside, Ms. Cotleur denominated the judgment in the trial court a default judgment and takes that position on appeal. Before 1988, Missouri's default rule provided:

> If a defendant shall fail to file his answer or other pleading within the time prescribed by law or the rules of practice of the court, and serve a copy thereof upon the adverse party, or his attorney, when the same is required, an interlocutory judgment shall be given against him in default.

*Rule 74.045, repealed and amended by Rule 74.05.* Missouri courts uniformly interpreted the rule to mean that where a defendant filed an answer, but failed to appear for trial, the judgment was not in default, but instead, rested on the merits. *See Ozark Mountain Timber Products, Inc. v. Redus,* 725 S.W.2d 640 (Mo.App.1987); *Ward v. Davis,* 701 S.W.2d 192 (Mo.App.1985); *Meyerhardt v. Fredman,* 131 S.W.2d 916 (Mo.App.1939).

■ On May 22, 1987, this Court adopted a new default judgment rule which became effective on January 1, 1988. The rule now provides: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these Rules, an interlocutory order of default may be entered against that party." *Rule 74.05(a)*.

Ms. Cotleur's argument in essential part turns on the interpretation of the words "or otherwise defend." Ms. Cotleur urges a reading of the phrase "or otherwise defend" to mean *"and* fails to defend in ways in addition to filing pleadings, pretrial motions, challenges to such motions as service, jurisdiction, venue, and the sufficiency of prior

pleading." There is not unanimity of authority in other jurisdictions with respect to the interpretation of the words "or otherwise defend." Ms. Cotleur urges that the current language of *Rule 74.05(a)* changed the rule so that the rule now should be broadly construed to include a wide range of failures on the part of counsel and parties as bases for default judgment, including circumstances such as hers in which a party actively participates in litigation, then fails to appear at a hearing or trial.

It is first worth noting, apart from the disagreements over the meaning of the amendment in other respects, that there is one plain and essential change effected by the amendment. Prior to 1988, the rule required a trial court to enter a default judgment against a defendant who failed to file an answer or other pleading within the time prescribed. The requirement is removed by the current rule under which, should a defendant appear and state a desire to contest the action, the court may, in the exercise of its discretion, refuse to enter a default.

█ In respect of the arguments made by the parties in this case, interpretation of the language of the rule calls simply for a policy decision. Having fully considered the interpretation urged by Ms. Cotleur and the effects of that interpretation, this Court rejects the broad brush in favor of interests affecting the orderly conduct of judicial process and the stability of judgments. The rule continues to be that where a party such as Ms. Cotleur files a petition, then files an answer to a cross-petition, but fails to appear for trial, the judgment is not a default judgment but, rather, is a judgment on the merits. This interpretation allows a party to come into court, abide by the Rules of Civil Procedure, and obtain a judgment upon which the party seeking affirmative relief should, absent circumstances found according to *Rule 74.06*, be able to depend.

█ Ms. Cotleur also suggests that, even though she may not otherwise come within the purview of *Rule 74.05*, the Court must treat the case as a true default because strict

rules pertaining to the setting aside of judgments are less rigorously applied where custody of children is involved. She cites in support *Hinson v. Hinson*, 518 S.W.2d 330, 332 (Mo.App.1975).

The trial court did not abuse its discretion in matters affecting the welfare of the minor child in this case. The present case is entirely distinguishable from *Hinson*, where specific allegations of neglect of the minor child and unfitness of each of the parties were asserted by each of the parties from the outset. Ms. Cotleur's petition for dissolution of marriage requested that joint legal custody be awarded to the parties. From this position Ms. Cotleur did not deviate, even when filing a first amended petition after Mr. Danziger had cross-petitioned seeking primary physical custody.[1] Not until the motion to set aside was filed was there any allegation with respect to the concern for the welfare of the minor child, and the expression did not come from Ms. Cotleur herself. She filed no affidavit, nor did she ultimately testify at the hearing on the motion to set aside. At the hearing on the motion to set aside, Ms. Cotleur's counsel and Mr. Danziger's counsel stipulated to admission of records relating to the allegations with respect to the child contained in the motion to set aside. There is no indication that the court failed to view them. Subsequent to the hearing, Mr. Kelly argued vehemently in a twelve page post-hearing motion all facts most favorable to his client, including those relating to the minor child. The trial court cannot be said to have abused its discretion in refusing to set aside the judgment on the basis of allegations touching upon the custody of the minor child under the facts and circumstances of this case.

This brings the Court to Ms. Cotleur's alternative claim on appeal, that the motion court violated *Rule 74.06(b)* because Ms. Cotleur, herself, was not guilty of inexcusable neglect and her lawyer's neglect is not imputable to her because he abandoned the defense of the case without notice to her.

---

1. In her answer to Mr. Danziger's cross-petition, Ms. Cotleur denied the respondent's boilerplate assertion that he was a fit and proper person to have custody of the child, preliminary to his request that the child's primary residence be with him.

*Rule 74.06(b)* provides in pertinent part that upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for "excusable neglect." *Rule 74.06(b)*. The rule permits, but does not require, Missouri courts to set aside a final judgment where a party is able to show excusable neglect.[2] Missouri trial courts have broad discretion in deciding whether to grant a motion to set aside a final judgment. *Jeffries v. Jeffries,* 840 S.W.2d 291 (Mo.App.1992); *Burris v. Terminal R.R. Ass'n,* 835 S.W.2d 535 (Mo. App.1992); *In re Marriage of Clark,* 813 S.W.2d 123 (Mo.App.1991).

Ms. Cotleur presumes neglect on the part of Mr. Kelly and presumes the neglect is inexcusable; she does not contest the trial court's finding in that respect. Her contentions in the alternative under this point are that her own neglect was not inexcusable, and that Kelly's neglect should not be imputed to her because Kelly abandoned the defense of her case without notice.

Ms. Cotleur's argument regarding whether her own lack of culpability formed a basis for relief under *Rule 74.06(b)* was not placed at issue in the trial court. Since the issue was not before the trial court, it is not a proper subject for review.

■ It remains to address Ms. Cotleur's argument that Mr. Kelly's neglect should not be imputed to her. Generally, actions of a party's attorney, including procedural neglect that precludes a client's substantive rights, are imputed to the client. *Sprung v. Negwer Materials, Inc.,* 775 S.W.2d 97, 100 (Mo. banc 1989); *Whitledge v. Anderson Air Activities, Inc.,* 276 S.W.2d 114 (Mo.1955); *Rice v. Rice,* 757 S.W.2d 644 (Mo.App.1988); *Rucker v. Thrower,* 559 S.W.2d 40, 42 (Mo.App.1977). *Culp v. Culp,* 216 S.W.2d 551 (Mo.App.1948).

■ The rule attributing an attorney's neglect to the party is a harsh rule. The effect of imputing the neglect of the attorney in this case to Ms. Cotleur is to impose the

judgment on her despite her having given responsibility for prosecuting and defending the case to one upon whom she should have been able to rely. The consequence of not imputing the neglect to the party, however, is to excuse the attorney of professional negligence, an excuse the law does not and cannot countenance.

■ A narrow exception to the rule imputing an attorney's neglect to a client applies when an attorney abandons a client without notice. *Whitledge v. Anderson Air Activities, Inc.,* 276 S.W.2d 114 (Mo.1955); *Parks v. Coyne,* 156 Mo.App. 379, 137 S.W. 335 (1911). Negligence is not equivalent to abandonment. Circumstances in which an attorney engages in representation of a client but fails properly to handle the matter is not abandonment. *Rucker v. Thrower,* 559 S.W.2d 40, 42 (Mo.App.1977).

■ Examination of the record shows that Mr. Kelly did not abandon Ms. Cotleur. Mr. Kelly represented Ms. Cotleur at the pleading stages and through discovery. Mr. Kelly, having learned of the trial setting, simply did not insure that the matter was covered. He continued in Ms. Cotleur's representation after the hearing. After learning of the judgment, he filed two motions attempting to have the judgment set aside and later attempted to initiate an appeal.[3] Failure to appear at trial is not enough, standing alone, to constitute grounds for setting aside a judgment. *Clinton v. Clinton,* 444 S.W.2d 677, 680–81 (Mo.App.1969).

This case is not similar to *Parks v. Coyne,* 156 Mo.App. 379, 137 S.W. 335 (1911), upon which Ms. Cotleur relies, where a defendant was caused to believe that his insurance company's attorney would provide a defense, but completely failed to do so. The *Parks* court held that the negligence of an attorney is attributed to the client, but where an attorney abandons a client's cause without notice, the client should be given a reasonable time

---

2. *See generally* Nanette K. Laughrey, *Judgments—The New Missouri Rule,* 44 J.MO.B. 11, 16–18 (1988).

3. Mr. Kelly, of course, did not present the claim of abandonment to the trial court. The first time

the question of abandonment could reasonably have been raised in this case was on appeal because Mr. Kelly was representing Ms. Cotleur at the proceeding on the motion to set aside.

to secure counsel before the attorney's neglect is attributed to the client. *Parks,* 137 S.W. at 340. Here, Mr. Kelly represented Ms. Cotleur throughout the pleading and discovery stages of the litigation and continued to represent Ms. Cotleur after trial.

The facts of this case are of the sort that tempt courts to make "bad law," because no court takes pleasure in viewing the possibility of damage to a client at the hands of a member of the legal profession. The question of the existence of damage is, however, a question for another day, in a different context, and under the law governing the points on appeal in this case, the judgment must be affirmed.

In summary, the judgment entered in this case was not a default judgment. *Schulte v. Venture Stores, Inc.,* 832 S.W.2d 13 (Mo.App. 1992), and *Hoskin v. Younger Cemetery Corp.,* 838 S.W.2d 476 (Mo.App.1992), to the extent that they conflict, are overruled. The inexcusable neglect of counsel was imputable to his client, counsel not having abandoned his client.

The judgment is affirmed.

BENTON, PRICE and LIMBAUGH, JJ., concur.

ROBERTSON, J., dissents in separate opinion filed.

HOLSTEIN and THOMAS, JJ., concur in opinion of ROBERTSON, J.

ROBERTSON, Judge, dissenting.

Prior to 1988, Rule 74.05 provided:

If a defendant shall fail to file his answer or other pleading within the time prescribed by law or the rules of practice of the court, and serve a copy thereof upon the adverse party, or his attorney, when the same is required, an interlocutory judgment shall be given against him in default.

Judicial application of the prior rule uniformly held that where a defendant filed an answer, a trial court's judgment rested on the merits and was not a default judgment even where the defendant failed to appear for trial. *See Ward v. Davis,* 701 S.W.2d 192 (Mo.App.1985) (judgment entered in action on promissory note where maker failed to appear for trial was not a default where an answer had been filed); *Ozark Mountain Timber Products, Inc. v. Redus,* 725 S.W.2d 640 (Mo.App.1987) (where pleadings are filed, issues are framed, cause comes for trial, and defendant fails to appear, judgment entered by the court is on the merits); and *Meyerhardt v. Fredman,* 131 S.W.2d 916 (Mo.App.1939) (judgment for plaintiff was not a default where entered after defendant filed an answer).

In 1988, this Court adopted a new Rule 74.05(a).

When a party against whom a judgment for affirmative relief is sought has failed to plead *or otherwise defend* as provided by these Rules, an interlocutory order of default may be entered against that party.

[Emphasis added.] The majority holds that the language "or otherwise defend" does not change the prior rule and that Rule 74.05 does not apply in this case. I disagree. In my view, the new language of Rule 74.05(a) changed the rule to include a wide range of failures on the part of counsel and parties as bases for default judgments.

As the majority notes, the districts of the court of appeals have reached contrary interpretations of the new rule. In *Herrin v. Straus,* 810 S.W.2d 593 (Mo.App.1991), the southern district decided that the "otherwise defend" did not alter the meaning of Rule 74.05(a). Once a party files a responsive pleading, the southern district held that there can be no default judgment. The western district agreed in the case *sub judice.*

The eastern district reached a contrary result in *Schulte v. Venture Stores, Inc.,* 832 S.W.2d 13, 14 (Mo.App.1992). There, the court stated that "[d]efendant's attorney failed to 'otherwise defend' when he failed to appear for trial" even though defendant filed an answer. *See also Hoskin v. Younger Cemetery Corp., Inc.,* 838 S.W.2d 476 (Mo.App.1992) (failure to respond to discovery or appear at the default hearing was a failure to "otherwise defend" within the meaning of Rule 74.05(a)).

In *Sprung v. Newger Materials, Inc.,* 727 S.W.2d 883, 886–87 (Mo. banc 1987), this

Court noted the inherent tension that exists in rules governing default judgments.

> Default judgments have been particularly troubling to our appellate courts over the years. Fundamental and competing interests are at stake. One commentator observes that
>
>> [i]f the courts are too lenient with the party in default, the rules of procedure will not be complied with and litigation will become increasingly inefficient. Furthermore, a primary goal of the judicial system is finality.... On the other hand, a primary goal of the judicial system is to seek the truth and to do justice between the parties. To promote this goal a case must be decided on the merits; procedural "niceties" should not pose insurmountable barriers.
>
> Laughrey, Default Judgments in Missouri, 50 Mo.L.Rev. 841, 843–44 (1985). [Citations omitted.]

In my opinion, the new Rule 74.05 attempts to accommodate this tension in two ways. First, I do not believe the addition of the phrase "otherwise defend" to Rule 74.-05(a) and the deletion of the phrase "or other pleading" were acts of such narrow meaning as the majority does. I believe these changes signaled a broadening of this Court's understanding of the phrase "default judgment" and a deliberate policy choice by this Court to lower procedural barriers—on proper, timely motion—to a judicial inquiry into the causes and validity of a judgment entered where a defendant does not plead, or does not appear for trial or otherwise defend. Thus, I had hoped that Rule 74.05(a) now accommodated appropriate judicial concerns that judgments be on the merits whenever possible. To that end, I read Rule 74.05 to include within the meaning of the phrase "default judgments" circumstances in which a party files an answer or other responsive pleading but fails to appear and defend at trial.

Second, I believe Rule 74.05(c) adequately considers the finality concerns that the majority finds so compelling that it refuses Ms. Cotleur the opportunity for a hearing. I believe Rule 74.05(c) erects a high barrier to a trial court setting aside a default judgment and permits the trial court to set aside a default judgment only

> [u]pon motion stating facts constituting a meritorious defense and for good cause shown, an interlocutory order of default or a default judgment may be set aside.... Good cause includes a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process.

Rule 74.05(c). Such a reading of the rule permits the judicial system to correct an erroneous decision with relative ease; the majority places the burden of error on the litigant whose counsel fails to appear for trial.

The majority admits that "interpretation of the rule calls simply for a policy decision." (Maj. op. at 237.) Such an admission concedes that the language of Rule 74.05(a) is susceptible to an interpretation that permits Ms. Cotleur a judicial determination of the merits of her claim that the judgment entered against her should be set aside on the motion she filed.

I believe that the rules of this Court are designed to foster, not hinder, the search for justice and that that concern is paramount to "interests affecting the orderly conduct of judicial process and the stability of judgments." (Maj. op. at 237). Indeed, I find it difficult to believe that interpreting Rule 74.05 as I propose—allowing a judicial inquiry into reasons behind a litigant suffering a judgment when her counsel fails to appear—detracts from the orderly conduct of the judicial process and the stability of judgments. Moreover, the interpretation I propose fosters judicial economy and the prompt resolution of claims. I do not believe the majority's rule aids either.

In my view this Court should hold that the trial court entered a default judgment against Cotleur and that Rule 74.05 applies in this case. Because the record does not reveal the trial court's reasons for overruling Cotleur's motion to set aside the default judgment, I would remand to the trial court for the required Rule 74.05(c) hearing to determine whether Cotleur both had good

cause for her failure to appear and a meritorious defense.

I respectfully dissent.