**Bernard B. LEVINE, et al., Appellants,**

v.

**Lawrence W. HANS, et al., Respondents.**

**No. WD 51092.**

Missouri Court of Appeals,
Western District.

Submitted Nov. 20, 1995.

Decided March 5, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 30, 1996.

Application to Transfer Denied
June 25, 1996.

Alvin D. Shapiro, Kansas City, for appellants.

Paul E. Vardeman, Kansas City, for respondents.

Before SMART, P.J., and LOWENSTEIN and BERREY, JJ.

SMART, Presiding Judge.

This appeal presents issues related to the concept of "surprise" as used in Rule 74.06 of the Supreme Court Rules. Bernard B. Levine, Steven Karbank, Neil Karbank and Roberta Jacobs appeal from an order granting a

motion for relief from judgment filed under Rule 74.06. Appellants claim that the trial court erred in granting the respondents' motion for relief from judgment because: (1) neither the law nor the facts permitted any finding of surprise within the meaning of Rule 74.06; (2) laches barred the action; and (3) grounds for equitable relief did not exist. The order of the trial court is reversed and the cause remanded to the trial court with directions to reinstate the judgment.

Appellants Bernard B. Levine, Steven M. Karbank, Neil D. Karbank and Roberta Jacobs ("the Karbank trustees") and Lawrence W. Hans, Gladys M. Hans, Richard F. Hans and Reta Hans ("the Hans partners") were partners in a Missouri real estate partnership, the Gregory–Fifty Company. The only significant asset of the partnership was a tract of property located at 350 Highway and Gregory in Raytown, Missouri. The Gregory–Fifty partnership was formed in May, 1977. The original partners were Lawrence Hans, Richard Hans, Robert Brozman, Barney A. Karbank and Phil Jacobs. Barney Karbank, a real estate broker, subsequently withdrew from the partnership, transferring his interest into a trust administered by Neil Karbank, Steven Karbank and Bernard Levine. The trust was substituted as a partner. The record provides no information as to the degree of control, if any, retained over the trust by Barney Karbank, or as to the identity of beneficiaries of the trust.

From 1988 until the end of 1993, Barney Karbank was the exclusive listing agent and broker for the property. During this time, Barney Karbank attempted to negotiate the sale of the property to Schnuck's Markets, Inc. According to respondents, Karbank informed them that negotiations had broken down due to a lack of interest on Schnuck's part.

On January 27, 1993, the Karbank trustees filed a petition asking that the partnership be dissolved and the real estate partitioned. At that time, the real estate remained unsold, and apparently there were no pending offers or ongoing negotiations. In their petition, the Karbank trustees claimed that the real estate was vacant and needed redevelopment and improvement to make it attractive for commercial use. They stated that the other partners refused to provide funds for redevelopment and refused to sell their interests in the property. Appellants asked the court to order the sale of the property. The court granted summary judgment to the Karbank trustees. The partnership was dissolved and the property ordered sold.

On December 2, 1993, the property was sold on the steps of the Jackson County Courthouse. Barney Karbank was the high bidder. He obtained the property for a price of $1,000,000.00. Both Lawrence Hans and Richard Hans also made offers at the public sale. The record reflects that the appraised value of the property was $930,000 to $1,130,-000. The sale was confirmed by the trial court on December 7, 1993, and the court authorized the issuance of a deed to Barney Karbank as purchaser. The trial court also awarded attorney fees and costs. The remaining funds were distributed.

Almost a full year after the court approved the sale, the Hans partners filed a motion seeking relief from the judgment pursuant to Rule 74.06(b). In their petition, the Hans partners stated that it had come to their attention that Schnuck's, whom they had understood had lost interest in the property, had subsequently purchased the property from Barney Karbank on March 25, 1994. They pleaded that this event was a "surprise," and that it warranted relief from the judgment "for the limited purpose of inquiring into the facts surrounding Karbank's purchase and resale of the Raytown Property by taking the depositions of Barney Karbank and a designated representative of Schnuck's Markets, Inc. in order to attempt to ascertain whether Karbank committed a breach of fiduciary duty by purchasing and then reselling the Raytown Property." On April 14, 1995, the trial court sustained respondents' motion and set aside the judgment dissolving the partnership for the limited purpose of taking the requested depositions. This appeal followed.

█ The trial court has broad discretion to grant or deny a motion to vacate a judgment, and its decision shall not be reversed unless the record clearly and convincingly proves an abuse of that discretion. *Burris v.*

*Terminal R.R. Ass'n.*, 835 S.W.2d 535, 537–38 (Mo.App.1992). An order granting relief under Rule 74.06 is an appealable order. *Kibbons v. Union Electric Co.*, 823 S.W.2d 485, 489 (Mo. banc 1992). Of the three Supreme Court Rules providing procedural means by which a judgment can be set aside, Rule 74.06(b) requires the highest standard for setting the judgment aside. *Cotleur v. Danziger*, 870 S.W.2d 234, 236 (Mo. banc 1994). This high standard gives "effect to the interests in stability of final judgments and precedent." *Id.*

Rule 74.06(b) provides that a final judgment may be set aside:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is irregular; (4) the judgment is void; or (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment remain in force.

In this case respondents' motion to vacate the judgment and the trial court's order are predicated on the ground of "surprise" as found in 74.06(b)(1). The surprise described in the motion is "the timing and circumstances of the resale by Barney Karbank to Schnuck's of the Raytown Property very close in time to his purchase of the Raytown Property at auction." The motion asked that the final judgment be set aside for the limited purpose of inquiring into the facts surrounding the sale.

We infer that the idea behind the motion of the Hans partners was that if discovery produced facts suggesting that Barney Karbank had breached his fiduciary duty to the partnership (by failing to inform the partners of his knowledge of latent or potential interest in Schnuck's while encouraging or permitting the Karbank trustees to seek a dissolution of the partnership and a public sale of the property), the Hans partners would then seek leave to bring Barney Karbank into the case as an additional party defendant, and seek an accounting from Mr. Karbank as to the profit from the sale of the property. The trial court agreed to vacate the judgment on these limited grounds.

The motion to set aside the judgment implicitly required the trial court to engage in a balancing of principles. One principle to be considered is that of finality, as reflected in the concept of the stability of judgments. Judgments must speak conclusively, and with authority, as settled propositions. A judgment is not to be either attacked or undermined on grounds which should have been raised earlier, or as to matters which are tangential to the subjects and issues resolved by the judgment. The conclusiveness of judgments "would seem to be a necessary predicate to the proper functioning of the courts themselves." 46 Am.Jur.2d *Judgments* § 494 (1994). At the same time, courts have long allowed relief from judgment on equitable grounds of fraud, duress, mistake, incapacity, and changed circumstances. Restatement (Second) of Judgments, § 68 comment (1982). Many times the judgment from which relief is sought is a judgment from a default *nihil dicit*, in which a party has failed to plead in response to the petition. In Missouri, the least stringent standard for relief from a judgment applies to a judgment taken by default *nihil dicit*, to which Rule 74.05 is applicable. *Cotleur* 870 S.W.2d at 236. Rule 74.06, which is pertinent here, requires the highest standard for setting aside a judgment because it involves a judgment entered after a court has ruled on the merits of the case. *Id.* In this case, the relief sought is relief from a judgment entered after a ruling on the merits. The ground on which the Hans partners seek relief is "surprise." The rule itself provides no insight as to what the rule drafters meant by the use of this term. Rule 74.06(b) was patterned after Rule 60 of the Federal Rules of Civil Procedure, which is designed to address both the issue of relief from a default *(nihil dicit)* judgment as well as the issue of relief from a judgment obtained after a hearing on the merits, whereas Rule 74.06(b) does not deal with relief from default judgments.

*Id.* The Supreme Court, in adopting 74.06(b), included the proposed language, "inadvertence, surprise, or excusable neglect," although these concepts appear historically to have been applied more frequently to relief from a default judgment rather than to a judgment obtained after a hearing on the merits. *See, e.g.,* 47 Am.Jur.2d *Judgments* §§ 809, 814, 816, 818 (1994); *Roberts v. Wilson,* 3 Cal.App. 32, 84 P. 216 (1906); *Baratti v. Baratti,* 109 Cal.App.2d 917, 242 P.2d 22 (1952). Nevertheless, such concepts can have applications in the context of a judgment rendered after a hearing. Perhaps the rule drafters, when they included the word "surprise," had in mind circumstances such as that of counsel being surprised because the trial was held sooner than anticipated, as was the case in *Stout v. Calver,* 6 Mo. 139 (1840)(although relief was denied on grounds that counsel was not diligent), and perhaps they were thinking of a circumstance where counsel was caught off guard because the case was ruled on a ground other than the ground asserted by motion, as in *Heilbron v. Campbell,* 23 P. 1032 (Cal.1890). They may also have had in mind circumstances like those in *Perkins v. Sykes,* 233 N.C. 147, 63 S.E.2d 133 (1951)(defendant's attorneys withdrew on morning of trial without prior notice to the defendant) and *Paulino v. Hardister,* 306 So.2d 125 (Fla.Dist.App.1974)(person bound by class action did not learn of action until after judgment entered).

In any event, "surprise" may be the least understood word in the entire rule. We have a general understanding of the terms "mistake," "inadvertence," "excusable neglect," and "fraud," because all of these terms have been defined in the context of obtaining relief from judgments in a substantial number of cases. The term "surprise" has been utilized as a basis for allowing impeachment of one's own witness, and as a basis for the granting of a new trial before a judgment has become final. *See* 40A Words and Phrases 503–504 (1964). Also, a few cases (mentioned above) have dealt with the concept in the context of default judgments. However, our research reveals relatively few cases where "surprise" has been the basis of granting relief from judgment in circumstances other than default judgments. Therefore, we have a relative paucity of authority from which to pattern our analysis in this case.

In *Hamm v. Hamm,* 437 S.W.2d 449, 451 (Mo.App.1968), one of the defendants, after filing an answer, had discharged his attorney and then failed to appear at trial. The court declined to grant relief from the judgment, noting that the failure to appear was neither "accident" nor "surprise."

> "Surprise," as used in relation to the granting of a new trial or in applying for equitable relief against judgments, refers to "such unforeseen events, misfortunes, losses, acts, or omissions, *as are not the result of any negligence or misconduct in the party*" [*Fretwell v. Laffoon,* 77 Mo. 26, 27(1) ] or "an unforeseen disappointment in some reasonable expectation *against which ordinary prudence would not have afforded protection*" [*Peers v. Davis' Adm'rs,* 29 Mo. 184, 190(4) ].

*Id.* at 453 (emphasis in original).

In *Ludwig v. Walker,* 111 N.Y.S. 1102, 1103–04, 59 Misc. 62 (1908), a New York court found a basis for granting relief from a judgment, stating:

> The facts, I have no doubt, make out a case of accident or surprise for which neither party is chargeable, but which, if left without redress, would result in substantial loss to the plaintiff and unconscionable advantage to the defendant.
>
> \* \* \* \* \* \*
>
> In legal intendment "surprise" is practically synonymous with "accident" ... and the latter is defined to be "an unforeseen and unexpected event, occurring external to the party affected by it, and of which his own agency is not the proximate cause, whereby, contrary to his own intention and wish, he loses some legal right or becomes subjected to some legal liability, and another person acquires a corresponding legal right, which it would be a violation of good conscience for the latter person, under the circumstances, to retain." 2 Pom. Eq. Juris (3d Ed.) § 823; 1 Am. & Eng. Ency. of Law, 277.

Accordingly, the "surprise" must have involved some legal injury or detriment affect-

ing the party in question, and the surprise must be something unexpected, as to which the party is free of neglect or lack of prudence. *Endsley v. Wolfe Camera Supply Corp.,* 261 S.E.2d 36, 38, 44 N.C.App. 308 (1979); *Mid Kansas Fed. Sav. & Loan Ass'n of Wichita v. Burke,* 666 P.2d 203, 206, 233 Kan. 796 (1983).

> In a legal sense, the word "surprise" is used to denote some condition or situation in which a party to a cause is unexpectedly placed to his injury, without any default or negligence of his own, which ordinary prudence would not have guarded against . . .

83 C.J.S. *Surprise* 1953.

The trial court in this case regarded the sale of the property in question to Schnuck's as a surprising event. The sale to Schnuck's was not foreseen, and the trial court could conclude that it was not the fault of any of the Hans partners that it was not foreseen. But the sale of the property, by itself, was not a circumstance which necessarily involved misconduct or which made the judgment inequitable. It is only if we *assume* that the sale was nefarious (because it had been prearranged, prior to Karbank's acquisition of the property and subsequent sale to Schnuck's, for the purpose of defrauding the other partners) that we could say that the surprise event made the judgment inequitable.

 Perhaps the Hans partners are concerned that, if the judgment is not vacated, it may be used to defeat, on grounds of *res judicata,* a subsequent claim for breach of fiduciary duty. We see no reason the judgment should prove troublesome in any separate action for breach of fiduciary duty against Mr. Karbank. Res judicata is based upon the principle that a party should not be able to relitigate, in a second proceeding, a claim which was, or which should have been, litigated in a previous proceeding. *Moody v. Ball,* 753 S.W.2d 590, 597 (Mo.App.1988). Res judicata generally will not bar a claim which the claimant had no opportunity to bring in the prior proceeding. *See King General Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints,* 821 S.W.2d 495, 501 (Mo. banc 1992).

The Hans partners offer no authority to persuade us that they will suffer legal injury if the judgment is not set aside. The Hans partners suggest that, without the discovery contemplated by the trial court's order, they would be handicapped in bringing a plenary action because they may have difficulty complying with Rule 55.15, which requires fraud to be pleaded with particularity. We fail to see why they would have difficulty pleading either fraud or the more likely claim of breach of fiduciary duty. We fail to see that, as a result of a surprise event, the Hans trustees have been deprived of any legal right, or have incurred any liability to the Hans partners. The motion filed in the trial court failed to plead how the judgment was rendered inequitable by the surprising event or otherwise. Nor did it plead the loss of a legal right against Barney Karbank by virtue of the judgment. It pleaded only that the Hans partners were surprised, and that they wished to inquire into the facts and circumstances of the sale. In effect, they simply sought to suspend the effect of the judgment temporarily, so that they could take more depositions, with the idea, presumably, that it would be satisfactory to reinstate the judgment if their discovery produced nothing warranting further action.

 Rule 74.06 contemplates that an adjudicatory process will take place after the party pleads a basis for setting aside a judgment and *before* the court takes the significant step of setting aside a judgment. Rule 74.06(c) provides for a hearing on the motion to set aside the judgment before the court issues a ruling granting the motion. In some cases, of course, the hearing will be an evidentiary hearing. In other cases, the facts may not require an evidentiary hearing. It is not clear to us, nor have counsel explained, why the trial court may have concluded it was necessary to set aside the judgment in this case before resolving whether the unforeseen event, combined with the judgment, amounted to a material injury justifying the vacation of the judgment. We assume the trial court could have issued subpoenas and conducted a hearing prior to determining

whether to set aside the judgment.[1]

Neither Barney Karbank nor Schnuck's Markets, Inc., were parties to the partnership dissolution proceeding. Unless Barney Karbank and Schnuck's are joined as parties, the court has no ability to grant relief as to either party. It was not the Karbank trustees which purchased the property at public sale and then sold it to Schnuck's. It was Mr. Karbank. There is no allegation that the Karbank trustees were acting in concert with Mr. Karbank in the Schnuck's transaction. Nor is there an allegation that Mr. Karbank was acting as an *alter ego* of the trust. Moreover, there is no allegation in this case that the Karbank trustees were guilty of breaching any fiduciary duty or any other duty to the other partners.

The Hans partners did not address the issue of their delay in the filing of their motion. The sale to Schnuck's occurred March 25, 1994. The motion to set aside the judgment was not filed until December 6, 1994. Rule 74.06(c) provides that a motion to set aside judgment on grounds of surprise "shall be made within a reasonable time and ... not more than one year after the judgment or order was entered." This language was patterned after the language of Rule 60 of the Federal Rules of Civil Procedure. Many courts, solicitous of the principle of stability of judgments, have been "unyielding in requiring that a party show good reason for the failure to take appropriate action sooner," Wright, Miller, & Kane, Federal Practice and Procedure § 2857 (1995). As this court said in the context of a motion to set aside on grounds of "mistake:"

It makes sense that the sooner the mistake is discovered, and acted upon, the more receptive the courts should be to a motion to set aside. Prompt action to set aside a judgment is less threatening to the stability of the final judgment rule than action taken substantially later.

*Bell v. Bell,* 849 S.W.2d 194, 198 (Mo.App. 1993). The issue of timeliness was raised below by the Karbank trustees, who asserted that the Hans partners were guilty of laches. The Karbank trustees argued that, as a result of the delay in the filing of the motion, Schnuck's had taken possession of the property, torn down previously existing structures, and had begun new construction. They showed that Schnuck's impending purchase of the property from Karbank was described in a prominent article in the Kansas City Star published February 27, 1994, a month before the sale was completed and more than nine months before the Hans partners filed their motion. The Karbank trustees argue on appeal that it was an abuse of discretion for the court to set aside the judgment where there was no showing that the motion was filed with reasonable promptness. They buttress this contention with the following remark from Restatement (Second) of Judgments § 74 comment e (1982):

e. *Acting Promptly.* In addition to acting diligently to discover the grounds of relief, the applicant must act promptly in seeking relief. This requirement is cumulative with the requirement that application be made within the time permitted by applicable statute of [sic] rule of court, such as the one year limit applicable to Federal Rule 60(b)(1)-(3). Thus, an application made within such a fixed time limit should nevertheless be denied if it was not made promptly after discovery of the circumstances on which it is based.

The Hans trustees fail to offer justification for their delay in moving to set aside the judgment. The failure of the Hans partners to justify their delay is troublesome.

The trial court, we are confident, attempted to recognize the state's policy interests in the stability of judgments by agreeing to set aside the judgment only for a "limited purpose" to allow depositions to proceed. How-

1. Unlike Rule 78.05, which deals with motions for new trial, Rule 74.06 mentions nothing about the court having any authority to allow the taking of depositions. Nevertheless, it is possible that the authority to order depositions is an inherent power of the court where the court has the power to receive evidence and to make a ruling. Rule 56.01 speaks in broad terms of relevance to the subject matter of "the pending action," and does not purport to limit the ability of courts to authorize depositions on pending matters. Discovery has its roots in equity. 27 C.J.S. *Discovery,* § 2. Discovery may be granted when necessary to some relief which a court has the power to grant. *Id.*

ever, any efficiency gained by expressly limiting the "purpose" of the order setting aside the judgment is undermined by the appealability of the order. *Kibbons v. Union Electric*, 823 S.W.2d 485 (Mo. banc 1992). In any event, we are doubtful that there is any legal substance to an expressed limitation of the *purpose* for setting aside a judgment. A judgment which has been set aside is a judgment which has been set aside. When the proposed discovery has been completed, if the court then wishes to undertake additional proceedings, such as allowing the addition of new parties, does the court need to issue another order broadening the *purpose* of setting aside the judgment? We are concerned that an interpretation of the law which would allow courts to re-open a judgment upon the basis that a surprise event has created a suspicion of wrongdoing may, in some circumstances, have the effect of creating another roadblock which impedes our quest for a reasonably efficient path to the final resolution of litigation. We do not quarrel with the mere fact that the approach here is innovative. Also, we do not purport to decide that in *every* instance it would necessarily be an abuse of discretion for a court to set aside a judgment for a "limited purpose" of further discovery of facts which could seriously affect the rights of the parties. However, we hold that in this case, where the movant did not show that any surprise event in connection with the judgment has caused any legal prejudice to the movant, and where the movant failed to justify the delay in filing the motion, the court erred in setting aside the judgment. We acknowledge the notion that the discretionary orders of the trial court should not be reversed unless abuse of discretion plainly appears. *Hamm*, 437 S.W.2d at 454. At the same time, we consider the fact that trial court discretion to set aside judgments "does not extend to instances where settled principles stand in the way." *Id.* While we applaud the trial court's motivation to ensure that there has been no abuse of the judicial system in the partnership dissolution, we believe that in this case the settled principles upholding the stability of judgments militate against the grant of an order setting aside the judgment.

The order setting aside the judgment is reversed. The case is remanded to the trial court for reinstatement of all orders related to the dissolution of the partnership.

All concur.