Talitha BURLESON, et al., Appellant,

v.

James FLEMING and Enterprise Leasing Company of Kansas, Respondents.

No. WD 58933.

Missouri Court of Appeals, Western District.

Submitted April 11, 2001.

Decided Aug. 7, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 2, 2001.

Application for Transfer Denied Nov. 20, 2001.

Christopher P. Sweeny (argued), John E. Turner (on briefs), Kansas City, MO, for appellant.

Steve R. Fabert (argued), David Phillip Madden, E. Dudley Smith, Overland Park, KS, Robert R. Barton, Kansas City, MO (on briefs), for respondent.

Before EDWIN H. SMITH, P.J., JAMES M. SMART, JR. and VICTOR C. HOWARD, JJ.

SMART, Judge.

This is an appeal of an order setting aside a judgment under Rule 74.06(b) in an equitable garnishment action. The appellants in this case are Talitha Burleson, Melissa Shaw, Camille Shaw, Marcella Berymon, and Damon Williams (hereafter sometimes collectively referred to as "Plaintiffs" or as "Judgment Creditors"). The Plaintiffs initially obtained judgment in their favor in a personal injury action against a party driving a vehicle leased from, and apparently insured by, Enterprise Leasing Company of Kansas. The Plaintiffs thereafter obtained judgment against Defendant Enterprise in an equitable garnishment action after the trial court struck the pleadings of Enterprise as a sanction for failure to cooperate with discovery orders. On August 9, 2000, the court set aside the judgment of May 22, 2000, on the basis of excusable neglect, under Rule 74.06(b). The Plaintiffs/Judgment Creditors argue on appeal that the trial court erred in setting aside the judgment because the neglect was not excusable. We agree and reverse the ruling of the trial court.

### Factual Background

In July of 1996, the Plaintiffs were involved in an automobile collision in which each was injured. The Plaintiffs occupied a car driven by James Fleming. The car driven by Fleming was leased to Fleming by Enterprise, which apparently also provided liability insurance to Fleming. Plaintiffs filed a personal injury suit against Fleming in July 1999, and obtained judgments in their favor in the following amounts: 1)Talitha Burleson: $300,000.00; 2) Melissa Shaw: $75,000.00; 3) Damon Williams: $50,000.00; 4) Camille Shaw: $ 10,000.00; 5) Marcella Berrymon: $10,000.00. After the judgment became final, the Plaintiffs, as judgment creditors, filed the instant equitable garnishment action against James Fleming and Enterprise Leasing.

The Judgment Creditors' petition for equitable garnishment, together with an opening set of interrogatories and first request for production of documents, were served upon Enterprise on October 22, 1999. Enterprise filed its answer on November 22, 1999. The attorney for the Judgment Creditors requested dates so he could take the corporate representative's deposition. The Judgment Creditors' attorney then received a call from Enterprise's counsel requesting an extension of time until December 10, 1999, to respond to discovery. Enterprise's counsel stated he would provide dates for the corporate representative's deposition. The Judgment Creditors' attorney memorialized this discussion in a letter.

On December 10, the attorney for the Judgment Creditors received a letter from Enterprise requesting an additional week and suggesting January 13 or 14, 2000, for the deposition date. On December 21,

1999, the parties set the deposition for January 14, 2000. This date did not work out and the parties agreed on February 11, 2000. Enterprise requested that the February 11 date be rescheduled to February 24, 2000, so it could respond to the document request. The Judgment Creditors agreed but stressed the need for responses to all outstanding discovery. Counsel memorialized the conversation in a letter and sent an amended deposition notice. On February 22, 2000, Enterprise's attorney faxed a letter to the Judgment Creditors stating he had been out of the office due to illness and was compiling the requested documents. The attorney requested the deposition set for the 24th be moved to March. The parties agreed to move the depositions to March 9, 2000, provided the discovery was produced by March 2, 2000. A second amended notice to take deposition was sent.

Enterprise failed to produce any discovery. On March 9, 2000, Enterprise's counsel called and stated he would produce responses to all discovery on the following day. Depositions were reset for March 21, 2000. Counsel for the Judgment Creditors sent a "golden rule" letter stating if discovery was not produced by March 10, 2000, as promised, sanctions would be sought. A third amended notice to take deposition was sent. Enterprise failed to produce the discovery. On the morning of March 21, 2000, Enterprise's counsel called and requested a continuance of the deposition. Counsel promised to produce the employees for depositions on March 29, 2000, and promised the discovery responses would be hand-delivered no later than Monday, March 27, 2000. The Judgment Creditors agreed, but reiterated that if discovery was not produced as agreed, sanctions would be sought. A fourth amended notice to take depositions was sent.

Enterprise did not produce any documents or discovery responses on March 27, 2000. On March 29, 2000, Enterprise's attorney filed a motion for protective order and a motion to quash the deposition. The trial court held a telephone conference to discuss motions, and at that conference denied the motions and ordered Enterprise to produce all outstanding discovery on or before April 4, 2000. The trial court further ordered that the depositions were to take place on April 7, 2000. The court warned that if respondent failed to comply with its order, it would entertain a motion to strike Enterprise's pleadings.

Enterprise did not produce discovery by April 5, 2000. On April 6, 2000, Enterprise's attorney sent a letter to the Judgment Creditors requesting additional time to respond and to reschedule the depositions. Counsel promised to produce all discovery and reschedule the depositions by April 12, 2000. The Judgment Creditors agreed but warned that if discovery were not produced by April 12, 2000, they would seek sanctions. Enterprise failed to produce any discovery responses on April 12, 2000; consequently, the Judgment Creditors filed a motion for sanctions asking the trial court to strike Enterprise's pleadings and enter a default judgment against Enterprise.

On May 2, 2000, the trial court granted the motion for sanctions, entered an "interlocutory judgment of default" in favor of the Judgment Creditors and set a hearing on damages. At the hearing on damages, the Judgment Creditors offered into evidence the underlying judgment and evidence of partial satisfaction of judgment of $50,000.00 paid by a joint tortfeasor. Enterprise offered no evidence. The trial court entered its judgment on May 22, 2000, in favor of the Judgment Creditors against Enterprise Leasing in the following amounts: Talitha Burleson-

$275,000.00; Melissa Shaw-$69,000.00; Damon Williams-$37,000.00; Camille Shaw-$7,000.00; Marcella Berymon-$7,000.00. The trial court further ordered interest on the judgment to run at the statutory rate of 9% from August 3, 1999, until the present, plus costs.

On June 1, 2000, Enterprise filed a motion for reconsideration. On July 5, 2000, new attorneys entered their appearance on behalf of Enterprise. On July 17, 2000, the new counsel filed a motion for new trial and a request for an extension of time to file the motion for new trial. Also on July 17, 2000, the new counsel on behalf of Enterprise filed a motion for relief from judgment. This motion was based on Rule 74.06, which provides the court may grant relief from a final judgment or order for excusable neglect. As factual support for the claim of excusable neglect, Enterprise attached and referred to the affidavit of Mike Mikkelson, an officer of Enterprise Leasing Company of Kansas. That affidavit included the following:

> * * "Fireman's Fund Risk Management Services has a contract to handle liability claims for" [Enterprise].
>
> * * On "April 18, 2000 F.R.M.S. called to request documents. I sent all existing documents April 28, 2000, ten days later."
>
> * * [Enterprise] "was never asked to produce any documents until April 17, 2000."
>
> * * [Enterprise] "was never asked to produce a corporate representative, and had no knowledge that such a deposition had ever been set or requested."
>
> * * "My file shows no correspondence or calls from April 1999 to April 2000."
>
> * * "I had no knowledge that a default was entered until July 12, 2000"
>
> * * "I had no knowledge that a default might be entered until after it was entered."

> * * "I believe no one else at Enterprise Leasing Company of Kansas ever received any other request."

The affidavit contained no explanation concerning the conduct of Enterprise's former counsel, Mr. Barton. On August 9, 2000, the trial court entered an Order granting Enterprise's "Motion for Relief from Judgment." In that same Order, the trial court specifically denied the "motion for reconsideration"; denied the motion for extension of time to file motion for new trial (ruling the court was without jurisdiction to extend time to file a motion for new trial); and denied the motion for new trial because it was filed out of time.

The Judgment Creditors appeal from the order granting the motion for relief from judgment, claiming the trial court erred in setting aside the judgment on the grounds of excusable neglect. The Judgment Creditors argue in their first point on appeal that the affidavit attached to the Rule 74.06(b) motion failed to establish grounds for excusable neglect because the motion attributed the fault for failure to comply with the court ordered discovery to its attorney, and the acts of the Enterprise's attorney are imputed to Enterprise. The Judgment Creditors also argue that the statements in the affidavit conflict with the prior statements of counsel and, therefore, should have been disregarded. And finally, even if the affidavit were accepted at face value, it provided no excuse as to why Enterprise's attorney failed to comply with the court ordered discovery or why Enterprise failed to maintain contact with its attorney. The Judgment Creditors' argument essentially is that the constant and continuous failure of Enterprise to respond to the discovery requests and depositions was not excusable neglect and that the court properly sanctioned Enterprise by the imposition of the default judgment.

The Judgment Creditors further argue that the fault was imputed to Enterprise because failure to do so would "excuse the attorney of professional negligence, an excuse the law does not and cannot countenance," quoting *Cotleur v. Danziger*, 870 S.W.2d 234, 238 (Mo. banc 1994) (court refused to excuse attorney's negligence and attributed attorney's failure to the non-negligent client).

Enterprise counters with a multi-prong defense, arguing first that this court does not have jurisdiction to hear the appeal. Enterprise seems to claim that this court does not have jurisdiction to hear this matter on two separate grounds. First, that the judgment of the court was merely an interlocutory order and therefore cannot be appealed. Second, that if the judgment is not an interlocutory order, the judgment never became final before modified by the trial court and thus is not appealable (which is another way of arguing the judgment was interlocutory).

Enterprise's argument that the judgment was merely an interlocutory order is without merit. Enterprise cites a number of cases referring to reasonable excuse, meritorious defense, and good cause. This language comes from Rule 74.05. Although the trial court mistakenly referred to Rule 74.05 in its sanction order, Rule 74.05 is not applicable to a judgment resulting from the imposition of sanctions. A "default judgment" imposed as a sanction under the rules of discovery is not governed by Rule 74.05 because it is not a true default judgment. *Cotleur*, 870 S.W.2d at 236. It "does not come by default in the ordinary sense, but is treated as a judgment upon trial by the court." *Simpkins v. Ryder Freight System, Inc.*, 855 S.W.2d 416, 420 (Mo.App.1993). "Thus, the procedure of Rule 74.05(c) does not govern a motion to set aside an interlocutory judgment of default entered as a

sanction for failure to give discovery, nor do good cause and a meritorious defense color the prerogative of the court to act to that end." *Id.* Moreover, the judgment entered May 22, 2000, after the hearing on the damages, was a final judgment, resolving all issues before the court.

Enterprise also argues that by filing the after judgment motions, it extended the time within which the court could amend or vacate the judgment under Rule 75 to ninety days; thus, it says, the judgment never became final and this court does not have jurisdiction to hear the appeal. Judgment Creditors' response is that the motion to reconsider is not authorized by rule or statute and, therefore, had no legal effect.

The truth is that it is immaterial whether the "motion for reconsideration" was an authorized after-trial motion. The judgment in this case was not interlocutory in any sense. An order granting relief under Rule 74.06 is appealable. *See, e.g., In re Marriage of DeWitt*, 946 S.W.2d 258, 261 (Mo.App.1997). An order granting a new trial is also appealable. *See, e.g., Hall v. MO Highway & Transp. Comm'n*, 861 S.W.2d 720 (Mo.App.1993). The premature filing of a notice of appeal does not deprive the court of jurisdiction. Rule 81.05(b). Consequently, the order setting aside the judgment is appealable. We have jurisdiction.

Next, we consider the issue of whether the trial court erred in setting aside the judgment on the basis of "excusable neglect under 74.06(b)." The standard of review is generally that of an abuse of discretion. *DeWitt*, 946 S.W.2d at 261. However, there can be no discretion exercised unless a party has pleaded matters which could, as a matter of law, be considered excusable neglect. *Cotleur*, 870 S.W.2d at 238.

Rule 74.06(b) provides in part that: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... (3) the judgment is irregular; (4) the judgment is void...." The Rule does not define excusable neglect. Several cases have relied heavily on the definition from Black's Law Dictionary for the definition. See generally, *Dewitt*, 946 S.W.2d at 262; *Gibson v. White*, 904 S.W.2d 22, 25 (Mo.App.1995). Black's Law Dictionary 566 (6th ed.1990), used by both of those cases, defines "excusable neglect" as:

> [F]ailure to take the proper steps at the proper time, not in consequence of the party's own carelessness, inattention, or willful disregard of the process of the court, but in consequence of some unexpected or unavoidable hindrance or accident, or reliance on the care and vigilance of his counsel or on promises made by the adverse party.

In the case before us, judgment was entered as a result of Enterprise's failure to respond to discovery. After Enterprise filed a motion to set aside the judgment on the grounds of excusable neglect, the court, without any specific findings of facts or conclusions of law, sustained that motion. Judgment Creditors now contend the trial court erred in setting aside the judgment because facts alleged in the affidavit and motion did not legally amount to excusable neglect and thus the court had no discretion in the matter.

■ The first argument Enterprise raised in the affidavit and motion to set aside the judgment was essentially that it was the lawyer's fault. Enterprise therefore suggests that the court properly let Enterprise "off the hook" as an innocent party victimized by its lawyer's neglect. Enterprise thus seeks to persuade us that it was within the trial court's discretion to grant relief for the judgment where the client shows that the lawyer was at fault. Enterprise does not argue that the lawyer was not neglectful; nor does it argue that his neglect was excusable. Rather, Enterprise simply asserts that the lawyer's neglect should not be the client's problem.

The Missouri Supreme Court has addressed this precise issue in the case of *Cotleur v. Danziger*. In that case, Ms. Cotleur filed a petition for dissolution of marriage, which was answered by her husband, and the parties participated in pre-trial discovery. Ms. Cotleur's attorney then withdrew by leave of court and Ms. Cotleur hired another attorney who failed to enter his appearance on her behalf. *Cotleur*, 870 S.W.2d at 235. The husband's attorney, unaware of the new attorney, secured a trial setting and sent notice of the setting directly to Ms. Cotleur. She then called her new attorney and informed him of the trial setting. No one appeared on the date of the scheduled hearing for Ms. Cotleur, and the trial court proceeded to hear evidence and enter judgment on the merits of the case. *Id.*

Subsequent to the judgment, Ms. Cotleur's attorney entered his appearance and filed a motion to set aside the judgment, which he denominated a default judgment. At the hearing to set aside the judgment, the attorney testified that he failed to appear at the scheduled hearing because he was out of town on other matters, that he thought the date was merely a docket call rather than a trial, and that he had asked another attorney to appear and request a continuance. *Id.* at 235–36. The other attorney had no recollection of being asked to appear. *Id.* at 236. The trial court, in denying the motion, did not specify upon which rule it based its ruling, but did state that there was "no, absolutely no excusable neglect." *Id.* On appeal Ms. Cotleur ar-

gued "that the motion court violated *Rule 74.06(b)* because Ms. Cotleur, herself, was not guilty of inexcusable neglect and her lawyer's neglect is not imputable to her because he abandoned the defense of the case without notice to her." *Id.* at 237.

The Missouri Supreme Court rejected this argument, stating "[g]enerally, actions of a party's attorney, including procedural neglect that precludes a client's substantive rights, are imputed to the client." *Id.* at 238 (citations omitted). The Court went on to note "[t]he rule attributing an attorney's neglect to the party is a harsh rule." But, "[t]he consequence of not imputing the neglect to the party, ... is to excuse the attorney of professional negligence, an excuse the law does not and cannot countenance." *Id.* The Court additionally noted:

> A narrow exception to the rule imputing an attorney's neglect to a client applies when an attorney abandons a client without notice. Negligence is not equivalent to abandonment. Circumstances in which an attorney engages in representation of a client but fails properly to handle the matter is not abandonment.

*Id.* (internal citations omitted).

■ In this case, Enterprise's attorney entered his appearance and answered the petition. The parties then proceeded to engage in discovery, with Enterprise's attorney consistently delaying and frustrating the discovery process. The failure to properly cooperate in discovery does not constitute abandonment of a client. The procedural neglect of Enterprise's attorney is imputed to Enterprise.

The same principle was applied in *Gibson v. White*, 904 S.W.2d 22 (Mo.App. 1995). In that case, plaintiff Gibson filed two wrongful death lawsuits arising out of a collision, one against White and another against two other co-defendants. The two cases were consolidated. After a settlement against the other defendants, the court dismissed the entire case a year later for failure to prosecute. *Id.* at 24. Gibson filed a motion to reinstate the claim against White based on Rule 74.06(b), claiming mistake, inadvertence and excusable neglect by her attorney. The trial court granted the motion and White appealed. *Id.*

■ This court noted that "[w]hile each case is to be considered on its own facts 'courts have consistently held that circumstances involving the human element of forgetfulness do not constitute excusable neglect.'" *Id.* (*citing to Burris v. Terminal R.R. Ass'n*, 835 S.W.2d 535, 539 (Mo. App.1992)). "Actions of a party's attorney, including procedural neglect that precludes a client's substantive rights, are imputed to the client." *Id.* at 25 (*quoting Cotleur*, 870 S.W.2d at 238). In holding that the trial court had erred in setting aside the order of dismissal, this court held that "[t]here was no evidence presented to show that the dismissal ordered resulted from the attorney's mistake, inadvertence or excusable neglect." *Id.*

■ In this case, the fault of Enterprise's attorney is without excuse. No effort has been made by Barton, Enterprise's former attorney, or by anyone else on his behalf, to explain his actions or provide mitigating circumstances. Enterprise cannot claim abandonment by the attorney because this conduct did not constitute abandonment. *Cotleur*, 870 S.W.2d at 238. The actions of the attorney are imputed to the client. *Id.* We think that *Cotleur* leaves no room for trial court discretion where the movant fails to plead and present facts that could be considered "excusable neglect."

The Judgment Creditors also argue that a separate ground for reversal of the trial court's decision to set aside the default judgment appears, because the affidavit

reveals that Enterprise had fault of its own in neglecting the case by failing to keep in contact with its attorney. "[I]t has been stated that in order for a party to obtain relief pursuant to a motion to set aside, that party must show his neglect of the case occurred through no fault of his own. The party seeking relief must establish 'he exercised such diligence as an ordinarily reasonable man would have exercised under the same or similar circumstances.' " *Willis v. Placke,* 903 S.W.2d 219, 221 (Mo.App.1995). In view of the fact that the attorney's neglect is not excusable, and because the attorney's neglect is imputable to Enterprise, it is not necessary for us to address the issue of whether Enterprise was also guilty of non-excusable neglect on its own.

Finally, Enterprise argues that the trial court took proper action in setting aside the judgment because the judgment contained such deficiencies as to be irregular or void. Specifically, Enterprise argues the judgment lacks a finding of indebtedness to the defendant or an order to pay money to the court. We disagree. The judgment recites that judgment is entered against Enterprise and sets out the amounts each plaintiff is awarded, plus interest, plus costs. The judgment further states that execution shall issue. We see no indication the trial court thought the judgment was defective. If the court thought there was a problem, the court could have modified the judgment under Rule 75.01 to clarify anything that seemed unclear. We see no reason any court officer or anyone else would have difficulty understanding the judgment. Enterprise cites no authority indicating otherwise.

### Conclusion

This court has jurisdiction to hear the appeal from the trial court's decision to sustain the motion to set aside the judgment pursuant to Rule 74.06. Because Enterprise failed to set forth grounds demonstrating excusable neglect, the trial court erred in granting the motion and setting aside its judgment of May 22, 2000. Accordingly the Order of August 9, 2000, is reversed and the matter is remanded for the trial court to reinstate the judgment of May 22, 2000.

EDWIN H. SMITH and HOWARD, JJ., concur.